## PERKINS' EXR'S, ET AL. v. WINTER'S ADM'RX, HEIRS, ET AL.

1. A decree was rendered for the sale of the real estate of an intestate, upon a petition by the administratrix, that the same could not be *fairly, equally and beneficially divided among the heirs;* it was objected in a collateral suit that it did not appear from the record, that the guardian of the infant children of the intestate answered the petition ; that the testimony was taken by the petitioner without notice to the heirs ; that a deed was directed to be made to the purchaser under the decree, although the purchase money was not paid ; that the infant heirs of the intestate had no notice of the proceedings in the Orphans' Court ; and that the publication was made without an order of Court, although the fact of non-residence was not verified by the oath of the administratrix : *Held,* that although these objections might be sustained by the record, they do not show a want of jurisdiction in the Orphans' Court, or establish the nullity of its decree, but are mere irregularities, for which a revising Court might reverse, without affecting the purchaser's title.

2. The Orphans' Court may take jurisdiction and order the sale of the real estate of a deceased person, although the decedent had executed a mortgage thereon, which was undischarged ; and the purchaser at such sale, will become invested with the title of the heirs of the mortgagor.

3. Where lands are sold *by the quarter section, according to the survey under the authority of the Federal Government, at so much an acre,* and bonds are given for the payment of the purchase money, the purchaser cannot claim a deduction for a deficiency in the quantity of the land—there being no fraudulent concealment or misrepresentation, by the vendor, or any one representing him, or authorized to act in the matter.

4. Where lands are sold by commissioners, under an order of the Orphans' Court, the sale confirmed, the commissioners *ordered* to make a " conveyance by deed" to the purchaser, and bonds for the payment of the purchase money executed by the latter, the rule of *caveat emptor* applies, and the purchaser can claim no indemnity, for any incumbrance that may rest on the title.

5. Commissioners appointed by the Orphans' Court to sell land, and ordered to execute a deed to the purchaser, are in no default if they do not look him up, and tender a conveyance. It is enough if they deliver to the purchaser a deed on demand. *Semble :* If the commissioners refused to execute the order of the Orphans' Court, that Court might cause a conveyance to be made, or, if its powers are inadequate, Chancery could lend its aid.

Appeal from the Court of Chancery sitting for the County of Lauderdale.

THE plaintiffs in error filed their bill, stating, that in the year 1835, Wm. O. Perkins, the testator, purchased two quarter sections of land, situate in the county of Franklin, for the sum of eight thousand and one dollars and sixty cents, and executed bonds, with sureties, for the payment thereof, at one and two years. These lands were sold as part of the estate of Wm. H. Winter, deceased, by commissioners, appointed under an order of the Orphans' Court of Franklin, upon the petition of the administratrix, representing that the same could not be fairly, equally and beneficially divided among the heirs, owing to their number, and the location of the lands.

It is further alledged, that the testator acquired no title by his purchase: 1. Because the lands were mortgaged previous thereto, for the sum of either $108,000 or $4,000, according as the mortgage may be construed; and this incumbrance is in full force. 2. Because the proceedings in the Orphans' Court were irregular and incomplete. In addition to this, it is stated, that the quarter sections of land are deficient in quantity, about fifty acres.

It is admitted that the testator took possession of the lands in question, and occupied them up to the time of his death; an event which occurred in the year 1840; that while he was ignorant of the defectiveness of his title, he paid one thousand dollars on the first note that matured; and it was only some short time previous to his death, that he was informed of the mortgage on the lands. He then refused to pay any thing more on his notes; but his health and habits being such as disqualified him for business, he took no steps to rescind the contract.

A suit was brought on both notes in the year 1843, in the County Court of Lauderdale, against the executors of Perkins, in the name of the commissioners, for the use of Winter's administratrix; and in February, 1842, a judgment was recovered for the balance due on the notes, with interest. The executors attempted to resist a recovery, upon the ground that the title did not vest in their testator, by his purchase, &c., but their defence was adjudged inadmissible at law. The bill prayed an injunction to restrain the collection of the judgment, and that process of *subpœna* may issue.

The administratrix of Wm. II. Winter, deceased, in her an-

swer, affirms, that the proceedings in the Orphans' Court of
Franklin were regular; admits that the lands were incumbered
by a deed of trust for $4,000, and no more, and insists that the
testator was informed, at the time of his purchase, of its exis-
tence; as it was duly registered in the County Court.  If he
was not advised of it at that time, he received such information
before he paid any part of the purchase money, and afterwards
made the payment of one thousand dollars, and promised to
pay the residue, and continued in possession as long as he liv-
ed; and his executors have occupied and cultivated the lands,
ever since that event.   She admits that the testator may some-
times have got drunk, but denies that his intemperance was
such, as to have prevented him from litigating the matters stat-
ed in the complainant's bill, had he been so inclined.

She submits to the Court, whether the deed of trust is a valid
incumbrance, for even $4,000 and interest, and alledges, that
the interest thereon was paid up to November, 1839, by the
President and Directors of the Tuscumbia, Courtland and De-
catur Rail Road Company.   She insists that the deed of trust,
if available for any purpose, can only be resorted to by the
*cestui que trust*, as a security, after the stock of her intestate
in that corporation, shall have been disposed of, in order to
extinguish the debt intended to be secured; and further states,
that the stock of her intestate in the company was sold, pub-
licly, as a part of his estate, before the time of the sale of the
lands in question, and the same was purchased by Messrs.
Walker, Wallace & Sons, with the agreement, publicly an-
nounced, that the purchaser should discharge whatever incum-
brance, if any, existed on the lands, by virtue of the deed of
trust.   It is also insisted that the charter requires that the
funds of the company should be exhausted before any lien,
such as that in question can be insisted on.

The respondent further states, that Isaac H. Walker, of the
firm of Walker, Wallace & Sons, did execute to the company
a deed of trust, in substitution of that executed by her intes-
tate, which was accepted by the company; and was offered, as
she is informed to the *cestui que trust*, and was such as he
was bound to accept, and in equity was a discharge of that
now set up by the complainants.   This latter deed bears date
he 6th day of November, 1838, and conveys certain tracts
108

of land and town lots, valued at five thousand, five hundred dollars, situate in the county of Franklin, is made upon the same trusts and conditions as the deed executed by the intestate, and is a substitute for it; is executed by the President of the Rail Road Company, and was *registered* in the office of the clerk of the County Court, upon the acknowledgment of the parties who executed the same.

She insists that the commissioners sold the land, according to the government surveys, without any warranty of quantity, and that the estate of her intestate is not chargeable for a deficiency—whether the subdivisions contain more than the surveys indicate, she cannot say. *Further*, that the proceedings in the Orphans' Court, were regular and sufficient, and that a deed was made by the commissioners, (in due form,) for the testator, which would have been handed to him on demand; and she now brings it into Court as an exhibit with her answer.

Respondent further objects to a rescission of the contract, because the estate of her intestate has been almost entirely distributed, and the interest in the notes in question, vested in his infant children, who would find it difficult, even if practicable, to recover their proportions of the estate from other distributees: and for the additional reason, that the testator, and his executors, have used the lands in a ruinous and wasteful manner, removing, pulling down, or destroying, a valuable dwelling house, out-houses, granaries, gin-house, &c. The value of these, including injury to land, are not less than twenty-five hundred, or three thousand dollars; besides all this, the timber has been used about the land, and on the adjoining lands of the testator, so as still further to depreciate its value.

If the contract shall be annulled, respondent insists that the testator's estate should be held accountable for the rents, and the injury to the land, loss of timber, &c., and that to the value of these the injunction should be dissolved. The respondent insists upon the benefit of a demurrer, in her answer.

The answer of Isaac H. Walker and wife, is substantially the same as that of Winter's administratrix; in addition, they state, that the former, as the agent of the administratrix, proposed to the testator, Perkins, (long after his purchase,) to have an accurate survey made of the lands, and a day was designated for that purpose, but the testator did not meet the respon-

dent according to appointment.    This, the administratrix agreed to do, in deference to the testator's objection, and from a willingness to receive pay for so much only, as was contained in the tracts purchased, though then, as now, she believed he was bound to pay for the number of acres ascertained by the government survey.

These respondents further answer, that the substituted security, was accepted by the Rail Road Company, in lieu of the deed of trust executed by the testator.   Delafield, the *cestui que trust*, was informed of it, and did not object to the value of the property embraced, but stated that the holders of the company bonds, did not wish any change in the security. They insist, if the lien of the first security is still continuing, it can only be for fifty cents in the dollar, (the present value of the bonds,) with interest, at seven per cent.

Richard H. Winter, in his answer, states the same facts as do his co-defendants, and insists that the omission to plead to the action at law, that the lands were deficient in quantity, leaves the complainant remediless as to that point: Further, that as the complainants set forth in their pleas, the other grounds of relief now relied on, to which the plaintiff in the action filed a replication, and a judgment was rendered, on verdict, in favor of the plaintiff, they cannot be allowed to litigate again the same matters.

The answer of John Delafield denies that the deed of trust executed by the intestate, has been substituted by any other security, and insists that it is not only charged with four thousand, but with one hundred and eight thousand dollars.

The bill was answered by the other defendants, but as they do not materially vary the case made by the answers recited, they need not be noticed.   On motion of the defendants, founded on their answers, the injunction was dissolved, at the complainants costs.   The Chancellor was of opinion—1. That the proceedings of the Orphans' Court were regular, and if defective, its decree could not be collaterally impeached, as its jurisdiction over the subject matter was unquestionable.   2. The Orphans' Court could order the sale of any interest in lands, of which a person died possessed; whether a fee simple, or a less estate; that such sale merely passed the decedent's interest, without any warranty; consequently, the purchaser takes the

title, for better, for worse, and if it is defective, he can have no redress. 3. The bill contains no charge of fraud, as it respects the sale, unless it be the failure to give notice of the deed of trust; and the facts disclosed, show, that there is no ground for such an imputation.

J. W. McClung and S. Parsons, for the plaintiff in error, insisted, that the proceedings in the Orphans' Court were irregular, (Clay's Digest, 224, §§ 16, 17, 18, 19, 21,) for the following reasons : 1. The guardian of the infant children of the intestate, did not answer the petition. 2. The testimony was taken without notice to the heirs. 3. A conveyance was ordered, without payment of the purchase money. 4. Publication was made without an order of Court, although the fact of nonresidence was not affirmed by the oath of the administratrix. 5. The infant heirs had no notice of the proceedings in the Orphans' Court.

If the Orphans' Court proceeded irregularly, the infant heirs may take advantage of it, and are entitled to a day for that purpose, after attaining their majority. [Sugden's Vend. 130, 446 ; 1 Dess. Rep. 125; 4 Bibb's Rep. 11 ; 2 Plow. Rep. 402 ; 2 Atk. Rep. 531, 403, and note ; 1 Plow. Rep. 503; 3 Id. 352.]

The injunction should not have been dissolved without first ascertaining, that the sale of the lands was for the benefit of the infant heirs.

The lands were mortgaged by the intestate; the Orphans' Court had no jurisdiction over the mortgagee, and of the matters of account between him and the mortgagor, and consequently, could not decree a sale. That Court can only act upon a legal title, which is unincumbered.

But the ground of equity mainly relied on, is, that after the purchase, by Perkins, he discovered that there was a subsisting lien on the land. [Story's Eq. §§ 122-3, 134, 140-1-2-3.] Without a warranty, or other stipulation, a purchaser has the right to insist on a good title, and if incumbered, before the contract is executed, the vendor must discharge it. The rule, *caveat emptor*, does not apply till the deed is executed and accepted. [4 Ala, Rep. 28-9; Sugden's Vendors, 345-7.] The fact of the vendee's taking possession, promising to pay, and giving further time to make title, will not prevent him from in-

joining a judgment at law, for the purchase money. [3 Russell's Rep. 320.] A purchaser is not obliged to accept a title that cannot be adjusted without litigation. [4 Russ. Rep. 374; 6 Call's Rep. 308; 1 Dess. Rep. 382; 3 Bibb's Rep. 317; 4 Johns. Ch. Rep. 669.]

The fact of selling, is an implied affirmation on the part of the vendor, that he can perform what he undertakes, viz: to make a title, and until a conveyance is made and accepted, the vendee may, in equity, insist upon the defectiveness of the vendor's title, as a reason why he should not be compelled to pay the purchase money. And the fact that the sale was made under an order and decree of a Court, will make no difference. [1 Brock. Rep. 228; 2 Id. 250; 4 Bibb's Rep. 635; 7 Paige's Rep. 556; 8 Paige's Rep. 12.]

It has been held, that after acquired lands do not pass by will, and a decree of the Orphans' Court, directing the sale of such land pursuant to the will, is a nullity. [2 Ala. Rep. 712.] So a sale of land by execution, on a decree obtained without an appearance, or service of process, passes no title. [4 Mon. Rep. 544.] In the case last cited, the Chancellor thought that the purchaser took the title for better for worse; but this it is insisted is not the law, and in a proper case a Court of Equity may rescind. [Sugden on Vendors, 45; 1 P. Wms. Rep. 745.]

It is not shown that Perkins intended to waive the defect of title. The answer of one of the defendants shows that he paid the $1,000, because he had the use of the lands. In addition, it may be said that he retained enough in his hands to discharge the lien, and he was entitled in equity to have it thus applied. [1 Ves. Rep. 266; 3 Sim. Rep. 29; 1 Russ. & M. Rep. 296.] But the fact of waiver must depend upon the evidence, and is not concluded by the answers.

Until the master's report is confirmed, and a conveyance made, the sale is considered incomplete, and liable to be set aside, at the instance of either party. And a defective, or incumbered title, will induce the Court of Equity to interfere, at the vendee's instance. [2 Paige's Rep. 64; Sugden's Vendors, 36, 37, 38, n. 41; 11 Ves. Rep. 559; 13 Ves. Rep. 518.]

The registration of the deed of trust, was no notice to Perkins, as he did not claim as a creditor of Winter, or a purchaser with an interest adverse to the *cestui que trust.* [6 Johns.

Ch. Rep. 428; Sugden's Vendors, last ed. top page, 251-2; 3 Atk. Rep. 650; 4 Dana's Rep. 260.]

Wm. Cooper, for defendants in error. If there is neither fraud nor a warranty, the purchaser of land cannot be relieved, either at law or in equity—there is no ground on which the jurisdiction of equity can attach. [3 Ala. Rep. 251; 2 Johns. Ch. Rep. 523; 5 Id. 32, 79, 82-3; 1 Id. 213-8; 5 Paige's Rep. 300-7; 1 Ball & B. Rep. 506, 538-9.] In the case of a sale by an assignee in bankruptcy, the same principle was recognized. [2 Edw. Ch. Rep. 37; 4 Mad. Rep. 364; 2 Caine's Rep. 188.]

The long continued possession of Perkins and his executors, and the distribution of the estate of Winter, should prevent a rescission of the contract. [14 Johns. Rep. 453.]

A purchaser under the decree of a Court of competent jurisdiction, must take the title as it is, and pay the purchase money, if he goes into possession. [Sugden's Vendors, chap. 4, § 3; 4 Gill and John. Rep. 479.]

A Court of Equity will not interfere to vacate a sale, made under the decree of the Orphans' Court; the latter tribunal may set it aside, if it should not be supported. [4 Gill & John. Rep. 479.] The title cannot be questioned collaterally. [1 Ala. Rep. N. S. 731-2-3-4; 12 Wend. Rep. 533.]

The continued occupancy of the land, removing or pulling down houses, cutting timber, &c., with a knowledge of the incumbrance, amount to a waiver of all objections to the title, and manifest a willingness to complete the purchase on the part of the vendee. [Sugden's Vendors, 212; 4 Brown's Ch. Rep. 494; 4 Rand. Rep. 478, 480; 3 Merivale's Rep. 64; 18 Ves. Rep. 505; 2 Monr. Rep. 18; 1 Bibb's Rep. 212; 4 Id. 103; 4 Porter's Rep. 384-5; 2 Johns. Ch. Rep. 520; 2 Brock. Rep. 210; 12 Ves. Rep. 27; 3 Swanton's Rep. 168; 4 Dess. Rep. 126; 1 Mad. Rep. 316; 1 Merivale's Rep. 52, 133; 2 Id. 492; 2 Molly's Rep. 102.]

As a general rule, a purchaser cannot be relieved in equity, unless he has a right to damages. There are exceptions to this rule, it is true, as in case of a personal disability to sue, &c. [2 McC. Rep. 158-9; 1 Fonb. Eq. book 1, ch. 3, § 1, and cases there cited.]

If the proceedings of the Orphans' Court were defective, the

defects should have been relied on at law., But the objections, if any, were merely errors, which made the decree reversible only, and not void. [3 Stew. & P. 355, 367; 1 Ala. Rep. N. S. 731-2-3-4.] A defendant should employ diligence in acquiring a knowledge of facts, to prepare for his defence at law, and if he neglects, he cannot be heard in equity. [1 Ala. Rep. N. S. 352-6; 2 Id. 21; 5 Porter's Rep. 547; 6 Id. 24; 7 Id. 552.]

Perkins was chargeable with notice of the deed of trust, which was duly registered. [1 Dana's Rep. 189; Dev. Ch. Rep. 470. If a purchaser at a sale under execution, or decree, have actual or constructive notice of defects of title, he has no remedy, (1 Cow. Rep. 622;) or if, by due diligence, he could have acquired notice, the same consequence follows. [2 Sim. & Stu. Rep. 472; 1 John. Ch. Rep. 298, 394.]

In a sale by a ministerial officer, or under an order of Court, there is no implied warranty of quantity. [1 Hill's Ch. Rep. 494.]

COLLIER, C. J.—The application for the sale of the real estate of William Winter, deceased, was regularly made by his administratrix, to the Orphans' Court of the county by which the administration was committed to her. In her petition, she describes the lands according to the surveys made by the Federal government, the town lots by their numbers, and states the names, ages, residence of the heirs, &c., and prays that the real estate may be sold, upon the allegation that it cannot be *fairly, equally and beneficially divided among them.* The Court took jurisdiction of the case, adjudged a sale, in compliance with the petition, particularly prescribing the terms, and manner thereof; and appointed five commissioners, who, or a majority of whom, were invested with authority to execute the decree.

In respect to the supposed objections to the proceedings in the Orphans' Court, we think that they are altogether untenable, in the manner in which they are presented. The act of 1822, authorizes an administrator to file a petition, in the form, and for the cause stated in the present case, and thereupon directs that a citation shall issue to the heirs, &c., and that guardians shall be appointed for such of them as are incapable of defending for themselves; that the guardians shall deny the

allegations of the petition, and where the denial is made, depositions are to be taken, as in Chancery cases. If a sale is decreed, commissioners shall be appointed in the decree, with directions to sell the estate, either for money or on a credit, as may be most just and equitable, who are to report to the Court, at the time limited therein. *Further*, upon the coming in of the report of the commissioners, the Court is required to "render a final decree in the cause; and if the terms of the sale have been complied with by the purchaser of the estate, the commissioners shall be directed by such final decree, to convey the estate sold to the purchaser." [Clay's Dig. 224-5.]

In Wyman, et al. v. Campbell, et al. 6 Porter's Rep. 219, the statute we have cited, and others of a kindred character, were largely considered. We there held, that proceedings in the Orphans' Court, in order to a sale of the realty, are *in rem*, against the estate of the decedent, and that jurisdiction attaches *quoad the thing*, where the petition is regularly filed, and recognized by the action of the Court, though the party in interest may not be notified of the pendency of the proceeding: That an order, or decree of the Orphans' Court, in a case within its jurisdiction, is as conclusive as a judgment in the ordinary course of judicial procedure; consequently it is not *void*, or collaterally impeachable, although the proceedings may discover errors, for which an appellate Court, upon a direct application, would reverse. *Further*, where a sale has been made, under an order for that purpose, if the decree is reversed for an error in the record, the defendant can only have restitution of the money, while the purchaser shall retain the property. So the failure of the administrator to execute the bond required, to entitle himself to the notes or bonds given by the purchaser, does not affect the validity of the sale; but it is necessary for the commissioners to observe every requirement previous thereto, though by any *post factum* omissions, the purchaser cannot be prejudiced. See, also, Grignon's Lessee v. Astor, et al. 2 How. Rep. (U. S.) 319.

Without stopping to inquire, whether the objections made to the proceedings in the Orphans' Court, are well founded in point of fact, it is clear that they do not show a want of jurisdiction in that tribunal, or establish the nullity of its decree.

They merely point out irregularities, for which a revising Court might reverse, without affecting the purchaser's title.

Even if it were competent for the complainants to object, that the confirmatory decree directed, that the commissioners should make a "good and sufficient conveyance by deed," to the purchasers, before the payment of the purchase money, such an objection would avail nothing; for the statute, as we have already seen, directs a final decree to be rendered upon the coming in of the report of the commissioners, and thereby to order the commissioners to convey the estate sold, to the purchaser, if he has complied with the terms of sale.

It is not pretended that the commissioners, in executing the order of sale, failed to observe any one of its requirements, but it is inferable from the bill, as well as the entire record, that they strictly pursued the authority under which they acted.

The complainants then, cannot be permitted to renounce the purchase made by the testator, and claim a rescission of the contract, because the proceedings in the Orphans' Court were not conducted with legal accuracy. The case cited, is a conclusive authority upon the point, and has been often recognized by us, as a correct exposition of the law. [Doe ex dem. Duvall's heirs v. McLoskey, 1 Ala. Rep. N. S. 708.]

It is insisted, however, that the statutes which provide for the sale of the real estate of deceased persons, do not authorize the Orphans' Court to take jurisdiction of the lands of a decedent, which are incumbered by a mortgage, or other security. The act of the legislature which has been cited, confers upon that Court the power to order a sale of the realty, whenever the facts required to exist, are established by proof. Its jurisdiction is neither expressly, nor by implication, confined to those cases in which the title is free from all opposing liens, or claims, and the generality of the terms in which the statute is phrased, will not permit us thus to restrict its application.

In Doe ex dem. Duval's heirs v. McLoskey, 1 Ala. Rep. N. S. 734, it was conceded, that the County Court could not decree the sale of the real estate of a deceased person, on which mortgages exist, and provide for their payment from the proceeds, but it was intimated that a sale of the mortgagor's interest, under an order of that Court, would confer upon the purchaser the right to redeem. Further reflection has but

tended to convince us, that the intimation there made, is well founded. A mortgagor in possession, has not only the equity of redemption, but he has a legal interest which may be sold under execution; and conceding that the Orphans' Court has no equitable jurisdiction, yet the statute cannot, by construction, be limited to cases in which the decedent had an unincumbered legal title. It is upon the *real estate,* that that Court is authorized to act, without reference to the completeness of the title. A sale under its decree, places the purchaser in the condition of the heirs of the deceased, and any remedy which they might have adopted, in order to disincumber the land, is open for him. Perhaps his situation would be more favorable than theirs, where he can be brought within the influence of the rules applicable to a *bona fide* purchaser, without notice. But this question need not now be considered.

We are now brought to inquire, whether the complainants are entitled to relief for the supposed deficiency, in the quantity of the land purchased by the testator. It has been held, that although the purchaser of a tract of land, promise to pay a certain sum *by the acre,* yet if he also agree to take it by the patent, or survey previously made, (in the absence of fraud on the part of the vendor,) he must be understood to risk the quantity; and therefore is not entitled to any compensation for deficiency. [Fleet v. Hawkins, 6 Munf. Rep. 188.] So the conveyance of a particular tract of land, without specifying quantity, does not bind the vendor to warrant a particular number of acres, if he has not falsely represented or concealed facts, within his own knowledge; although both parties may have expected, (judging from documents and other evidence,) that the number of the acres was greater, than upon a subsequent survey it appears to be. [Tucker v. Cocke, 2 Rand. Rep. 51.] In Harrison v. Talbot, 2 Dana's Rep. 261, it was determined, that where the sale of land was by the tract, or where the quantity was stated merely by way of description, Chancery could afford no relief, on the ground of mistake of quantity. So where a house and lot in town, described as containing *nearly two acres,* was advertised for sale at auction; the auctioneer stated at the sale, that there was nearly two acres, but pointed to the inclosure of the lot, as containing the land he proposed to sell; and it appeared to have been a sale in

*gross.* On a bill for a specific performance, at the suit of the vendor, it was decreed that the purchaser was not entitled to any abatement in price, for the deficiency; although the lot contained but one acre and twelve hundredths. [Foley v. Mc-Keown, 4 Leigh's Rep. 627.] And if land is sold in a body, by a designated name, or by the acre, the purchaser can claim nothing for deficiency. [Hoffman v. Johnson, 1 Bland's Rep. 109. See also, Brown v. Parish, 2 Dana's Rep. 9; Stebbins v. Eddy, 4 Mason's Rep. 414; Whaley v. Eliot's heirs, 1 A. K. Marsh. Rep. 343; Jolliffe v. Hite, 1 Call's Rep. 301; Pendleton's heirs v. Stewart, 5 Call's Rep. 1; Pringle v. Samuel, 1 Litt. Rep. 44; Veeder v. Fonda, 3 Paige's Rep. 94; King v. Hamilton, 1 Peters' Rep. 311; Eubank v. Hampton, 1 Dana Rep. 343; Hampton's heirs v. Eubank, 4 J. J. Marsh. Rep. 634; Portman v. Mill, 2 Russ. Rep. 570; Moredock v. Rawlings, 3 Monr. Rep. 76; Hull v. Cunningham's Ex'r, 1 Munf. Rep. 330; Nelson v. Carrington, 4 Munf. Rep. 332; Dozier v. Duffee, 1 Ala. Rep. N. S. 320; Minge v. Smith, Id. 415.]

In the case at bar, the land of which the testator was the purchaser, was sold by the quarter section, according to the survey made under the authority of the Federal government, and each quarter was supposed to contain one hundred and sixty acres—that being the proper size of such a subdivision. By bidding it off at a certain sum *per acre*, the purchaser expected to pay for so much land, as the patent from the United States to the patentee, recited to be the number of acres embraced by each quarter section. Neither party contemplated a survey in future; and if the tracts were larger .than supposed, the purchaser would be entitled to the excess, or if less, he must stand by his bargain. This view of the case, as it respects the assumption of fact, is sustained by the record, and the legal conclusion, seems to us to result so clearly, from the authorities cited, as to make it unnecessary to amplify the point.

It remains but to inquire, whether the fact, that the land was incumbered by the intestate, Winter, if Perkins purchased without a knowledge of the incumbrance, entitles the representative of the latter to claim a rescission of the contract, or a deduction *pro tanto* from the purchase money.

In respect to purchases of land consummated by a deed,

Chancellor Kent says, "If there be no fraud, and no covenants taken to secure the title, the purchaser has no remedy for his money, even on a failure of title. This is the settled rule at law, and I apprehend the same rule prevails in equity. I know of no case in which this Court has relieved the purchaser, where there was no fraud and no eviction." [Abbott v. Allen, 2 Johns. Ch. Rep. 523. See, also, Clements v. Loggins, 1 Ala. Rep. N. S. 622; Younge v. Harris' Adm'r, et al. 2 Id. 108; Steele v. Kinkle and Lehr, 3 Id. 352; Cullum v. The Branch Bank at Mobile, 4 Id. 21; Caldwell v. Kirkpatrick, 6 Ala. Rep. 60; Gardner v. Kettles and another, 3 Hill's Rep. 330.]

It is argued for the defendants, that whatever rules apply to sales of land, where the proprietor is in fact the vendor, the purchaser at a judicial sale, can claim no indemnity for a defect in the title; but, as to him, the rule of *caveat emptor* is strictly applicable. In Friedly v. Scheetz, 9 Sergt. & Rawle's Rep. 156, one of the questions was, as to the effect of a sheriff's sale. The Court said, "It is a mistake, when it is supposed the sheriff sells a sound title. He sells the claim of the defendant in the execution, and no more, as free and clear an estate as the debtor held; and the rule of *caveat emptor* is binding on every purchaser at sheriff's sale. Fraud, a clear mistake in the description of the property by the sheriff, its situation, its dimensions, would raise a different question; but, even in these cases, the purchaser ought not to lie by, when he has obtained the knowledge, but should move the Court to set aside the sale, and under some circumstances, long delay after discovery, would amount to an abandonment of the objection."

In the case of the Monte Allegre, 9 Wheat. Rep. 616, the claimant filed his petition, setting forth, that at a public sale of part of the cargo of the Monte Allegre, he purchased a large quantity of tobacco, for which he paid the marshal, under whose superintendance the sale was conducted, $15,495 46. That the tobacco was sold by sound and merchantable samples, and claimant became the purchaser, under the impression that the bulk corresponded with the samples; but upon inspection, the same was found to be wholly unsound, and unmerchantable, and upon a re-sale yielded the sum of $4,818 52, and no more. That the cause in which the order was passed,

by virtue of which the tobacco was sold, was still pending in the Court; and the proceeds of the sale remained there, under its authority and control; thereupon he prayed for such relief as, upon proof of the allegations of the petition, he might be considered by the Court entitled to. It was insisted, that in judicial sales, the Court has entire control over the contract. It considers the contract as made with itself, and will interfere under equitable circumstances, to relieve the purchaser, where it would not interfere in a private contract; and this doctrine applies both in Courts of equity and admiralty. To this argument, it was answered, that admitting there had been gross fraud, or a warranty, express or implied, by the marshal, or the auctioneer, yet neither the property nor owners, were answerable to the purchaser for the consequences. That the sale was by the Court, not by the owners; the former was not even the agent of the owners *pro hac vice*, but the Court, advancing the purposes of justice, orders the property to be sold, without authorizing a warranty. This view of the respondent was sustained by the Court, who remarked, that judicial sales made by an officer, bear no analogy to sales made by agents appointed by individuals for that purpose; in the latter, the exhibition of a sample would be an implied warranty of quality, binding on the principal, but in the former, the officer is bound by the authority under which he acts, and beyond this, cannot implicate the property, nor involve the owners in responsibility. *Further*, the Court said, " It is true, that the proceeds of the Monte Allegre, and her cargo, remain in the Circuit Court, and may be subject to the order of this Court, if a proper case was made out, which, in law or equity, fixed a charge upon this fund. These proceeds are in Court, as the property of the original owners, and for distribution only. And if such owners would not be liable at law, for the loss upon the tobacco, it is not perceived, that any principle of justice or equity, will throw such loss upon their property. The principle, if well founded, cannot depend upon the contingency, whether or not the proceeds shall happen to remain in Court, until the defect in the article sold is discovered. If the proceeds are liable, they ought to be followed into the hands of the owner, after distribution; and if they cannot be reached, the remedy ought to be *in personam*."

In Brown and Brown v. Wallace and another, 4 Gill & J. Rep. 491, the Chancellor admitted, that in most instances where lands are sold under a decree in England, the Court undertakes to sell a good title, and hence the practice of referring it to a master, to report whether the title is unembarrassed. But he insisted that the law was otherwise in Maryland, and in that State the rule *caveat emptor* applied. *Further*, "The Court, in no case, undertakes to sell any thing more than the interest of the parties to the suit; and, consequently, it allows of no inquiry into the title at the instance of a purchaser, or any one else. The Court makes no warranty of any kind, of the title sold by its trustee, and therefore cannot listen to any objections as to defect of title, or be involved in any inquiry into its validity." "And it is also necessary for the same reason, that the Court sells only the right of the parties to the suit, that the purchaser should ascertain for himself, whether or not the title of those parties may not be impeached, or susperseded, by some other, and paramount title. For he has no right to call upon the Court to protect him from a title not in issue in the cause, and no way affected by the decree." See also Ridgely v. Gartrell, 3 Har. & McH. Rep. 450; Anderson v. Foulke, 2 Har. & G. Rep. 358. In the case cited from 4th Gill & Johnson, the Court of Appeals, without inquiring, whether the doctrine of *caveat emptor*, applied to sales made by the trustees of the Court, determined, that where such a trustee, at the time of sale, expressly declared, he only sold the estate, right and interest, which the parties to the decree had in certain lands, and if they had no right, he sold none, there can be no pretence of warranty. It was also held, that although the County Courts of Maryland, exercise equity jurisdiction, they cannot give to a party, injured by the trustee of the Court of Chancery, any relief, and *vice versa*.

So it has been decided in South Carolina, that the rule of *caveat emptor* applies to sheriff's sales. All, say the Court, who attend such sales, ought to take care and examine into the title, &c., and no warranty can be implied on the part of the owner, as to whom the proceeding is compulsory, nor of the sheriff, who is the mere agent of the Court, nor of the Court itself. The creditors of Thayer v. Sheriff of Charleston, 2

Bay's Rep. 170. See the practice in England in respect to sales under decrees, 2 Smith's Prac. 187 to 212.

In the present case, it appears that the Orphans' Court adjudged the lands in question to be sold, and appointed five commissioners, with authority to them, or a majority of them, to execute the decree, and report their proceedings; the commissioners accordingly sold the land, pursuant to their authority, reported the fact to the Court, together with the name of the purchaser, the price, security given, &c. Thereupon it was ordered, that the commissioners make to the purchaser, a good and sufficient conveyance, by deed. Conceding, that where a person appoints another his agent, to sell property, the right to warrant its title and quality, is embraced in the power to sell, and, unless restricted, it is a necessary consequence of it, yet the same rule it is conceived does not apply to agents appointed by the Court for executing its order of sale. The nature of the power, the occasion of conferring it, and the authorities cited to the point, clearly show, that such is the law.

Here the commissioners were the agents of the Court, to execute its decree, so that, in legal effect, the sale was made by the Court itself. If the decree was irregularly executed, or there was a sufficient reason for relieving the purchaser, because the title was incumbered, or otherwise defective, the proper course of the purchaser was to except to the report, if he acquired a knowledge of the defects previous to confirmation. We will not say that a purchaser may not afterwards go into equity upon any state of facts, but we think, that to entitle him to be there heard, he should show, that he employed proper diligence to inform himself of the condition of the title, before the report was definitively acted on. It is not pretended, in the case before us, that the commissioners were informed of the incumbrance upon the land, that they used any means calculated to prevent inquiry, or that the testator attempted to ascertain whether he was purchasing a clear title.

The confirmatory order of the Orphans' Court, was its final action in the case before it. It required the commissioners to make a "conveyance by deed," to the purchaser. But in order to perform this duty, they were under no obligation to follow after him—it was enough, if they delivered to the purchaser a deed on demand. The bill does not alledge that it was

ever requested, and it cannot be intended that the commission-
ers are in default. If it had been shown to the Orphans' Court
that they refused to execute its order, that Court, perhaps,
might have caused a deed to be made, or, if its powers were
inadequate, Chancery could have lent its aid.

It is sufficiently shown by the bill, that the purchaser exe-
cuted his notes with surety, for the payment of the purchase
money, that he went into possession, and continued to occupy
the lands for at least five years, and up to the time of his death;
and that his executors still possess and cultivate them. His
possession for so long a time, and even after he was informed
of the incumbrance, to say nothing of the occupancy of the ex-
ecutors, unexplained, furnish strong reasons (if there were no
others,) against the repudiation of the purchase; but there is
another ground, still more potent, as we have already seen,
which is a bar to the relief sought.

If a deed had been executed, we apprehend it would not
have been contended, that the purchaser could have claimed a
rescission of the contract, or deduction from the purchase mo-
ney, to the extent of the incumbrance. The omission to exe-
cute the deed, (especially when not demanded,) should not be
permitted to prejudice those who are in no fault. The purcha-
ser would not be benefited, any farther than it would invest
him with the legal title, to whatever interest the parties to the
litigation in the Orphans' Court had. This interest he was
entitled to, in equity, and might have there successfully assert-
ed against a mere legal right. The commissioners had nothing
but a ministerial duty to perform, under the final decree; they
could not convey with covenants of warranty, but their deed
would only have operated as a quit claim of the title of the
heirs of Winter.

From this view of the case, it is clear that the sale was com-
plete, and in the absence of fraud, &c. the complainants cannot
require the defendants to relieve the land from the incumbrance,
or to permit them to do it, in part payment of the purchase mo-
ney. The questions considered are conclusive of the cause, as
presented to us, and the decree of the Court of Chancery is
consequently affirmed.