## WORTHINGTON, Adm'r, v. McROBERTS, et al.

1. Sales made by order of the Orphans' Court, are judicial sales, and the rule *caveat emptor* applies.
2. Three commissioners were authorized by the Orphans' Court to sell land, but one attended in person, and another was present by an agent, and two united, in making a report of the sale to the court, by which it was confirmed. The purchaser having executed his notes, and taken possession of the land, which he retained for about three years—Held, that he could not abandon the possession, and refuse to pay the purchase money, for an alledged irregularity in the sale.
3. A purchaser of land, at a sale made by order of the Orphans' Court, who is let into possession, cannot defend himself at law, whilst the contract is in force, when sued for the purchase money, for an alledged failure, or defect of title. Whether Chancery would not, in certain cases, grant relief—*Quere?*
4. No precise form of words is necessary to be employed in confirming a sale made by commissioners. Any thing which expresses the approbation of the court, to the action of the commissioners, is sufficient.
5. The court has the power, if it thinks proper, to withhold the title, until the purchase money is paid.

Error to the Circuit Court of Benton.

Assumpsit by the plaintiff in error, on two promissory notes for $1,500 each.

Upon the trial, as appears from the bill of exceptions, the defendant proved that the notes in suit were given for a tract of land, sold under an order of the Orphans' Court, as a part of the estate of Robert Porter, and introduced in evidence, the record and proceedings in the cause, by which it appeared that Joseph McRoberts, Robert S. Porter, and Jonathan Whitesides, were appointed commissioners to sell the land—that two of the commissioners reported to the Orphans' Court, that they had sold the land to William McRoberts, and William W. Porter, for $3,000, and had taken their notes therefor, which was received by the court, and ordered to be recorded. It was also in evidence, that Whitesides, one of the

38

commissioners, had nothing to do with the sale—that one of the commissioners sent an agent to represent him, and but one attended in person. It further appeared, that the purchaser, shortly after the sale, put a tenant upon the land, and cultivated it for about three years. It was also proved, against the objection of the plaintiff, that, in 1843, defendant informed his tenant, that he had abandoned possession of the land; this was after the commencement of the suit. He also proved against the plaintiff's objection, facts tending to show a defect in the title in the deceased, to a part of the land.

The court charged, that unless two of the commissioners appointed to sell the land, were present, conducting the same, the sale was void, although two of them joined in making their report of the sale, to the Orphans' Court, and it was approved by the court and recorded, and that if such was the fact, they must find for the defendant.

The plaintiff moved the court to exclude all the evidence introduced by the defendant, which the court refused. He also moved the court to charge, that under all the evidence in the cause, he was entitled to recover.

Further, that although but one commissioner was present at the sale personally, and another by his agent, if *two unite* in making the report, and it was received by the court, they ought to find for the plaintiff. These charges the court refused to give, and the plaintiff excepted, as well to the charge given, and the evidence admitted, and now assigns these matters as error.

S. F. RICE, for plaintiff in error. The defendant being let into possession of the land, the evidence showing a want of title to a part of the land, was improperly admitted. [3 S. & P. 92, 355, 431; 1 Ala. Rep. 623; 7 Id. 814.]

No objection can be taken here to the want of power in the commissioners, as the sale is the act of the court, the more especially as the defendant went into possession under the sale, [7 Ala. Rep. 170, 346, 314, 871; 21 Wend. 183.]

The power to sell is not conferred on the commissioners, *nominatim*, but to them as commissioners officially, both by the statute, and by order of the Court. The commission is to them in the aggregate, and to prevent a failure in the

performance of an important public duty; one may act alone, or they may all delegate their power. [1 Dev. & Bat. 389; 21 Wend. 440; 6 S. & R. 170.]

W. P. CHILTON and WHITE, contra, contended, that the sale was void—that the power was to all, and could not be executed by a part. There was no confirmation of the sale by the court, and no obligation for title by the commissioners, there was therefore no consideration for the notes exe- cuted by the defendant. Sugden on Pow. 489; 1 B. & Ald. 608; 16 Law. Lib. 264; Ib. 15, 240, 264.]

Every thing necessary to the execution of a power, must be strictly complied with. [3 East, 410; Sugden on Pow. 210; 6 Porter, 219; 7 Ala. Rep. 864; 2 How. U. S. 319.]

If there was error in the admission of the testimony, plain- tiff was not thereby prejudiced·

ORMOND, J.—As we intimated at the hearing of this cause, it is a plain case for the plaintiff in error.

If it were conceded that sales made by order of the Or- phans' Court, were to be governed by the same rules which regulate the execution of powers generally, we apprehend it would be difficult to establish, that a vendee could take advantage of the defective execution, by an agent, of a power; to which he was privy, and consenting, against the will of him for whom the agent acted, and who was willing and desirous to affirm the due execution of the power. The authorities relied on, are either expositions of what is neces- sary to the due execution of a power abstractly considered, or they are cases, where the principal is endeavoring to avoid the acts of his agent, because the authority under which he acted was not strictly pursued. It is not necessary to pur- sue this subject further, and we content ourselves with refer- ring, on this point, to the kindred case of Jennings v. The Adm'r of Jenkins, at this term.

This case stands upon higher grounds than the inability of a vendee to take advantage of the defective execution of a power, conceding that such was the fact, against the will of the agent's principal, desirous to affirm it. This is a judicial sale, it is in effect, a sale made by the Orphans' Court, act-

ing for the heirs, and those interested in the estate, and the rule *caveat emptor* applies in all its rigor. Those who deal with it, are bound to inquire, and have the means of ascertaining by what authority it acts, and what it professes to sell. We had occasion to consider this question in Perkins v. Winter, 7 Ala. R. 871. It is there said, "If the decree was irregularly executed, or there was a sufficient reason for relieving the purchaser, because the title was incumbered, or otherwise defective, the proper course of the purchaser was, to except to the report, if he acquired a knowledge of the facts previous to confirmation." The court proceed to state, that facts may exist, authorizing an application to Chancery for relief.

It certainly would be a most unjust procedure, if a purchaser at such a sale, with full knowledge of all the facts, or at least having the means of knowledge, could be permitted, nevertheless, to go on with the purchase, execute his notes for the purchase money, take possession of the land, suffer the sale to be confirmed by the court, in the belief that it was regular, and after the lapse of nearly three years, abandon the possession, and refuse to pay the purchase money, for an alledged irregularity in the sale.

The case of Lamkin v. Reese, 7 Ala. R. 170, goes far beyond this, and yet relief was refused in Chancery. That was a proceeding in equity, for the rescission of a sale, made by order of the Orphans Court. It was held, that although the Orphans' Court had no jurisdiction to decree the sale, yet if the purchaser took possession of the land, and retained it for two years, he could not rescind the contract, if the heirs were able and willing to make him a title.

The evidence as to the defect of title to a part of the land, was also improperly admitted. If there was a total failure of the title, a court of equity might, in a proper case, afford relief—or if it failed as to a part of the land, might possibly decree compensation; but the mere fact that the title was imperfect, or that there was an incumbrance upon it, would be no ground, in the absence of fraud, for equitable interposition. [Perkins v. Winter, 7 Ala. Rep. 871.] But in no case could the purchaser defend himself at law, whilst the

Worthington, Adm'r, v. McRoberts, et al.

contract remained in force, he having gone into possession under it.

It was also contended, that there had been no confirmation of this sale by the Orphans' Court. The order of the court is to the following effect. "The commissioners appointed to sell the estate of Robert Porter, deceased, having submitted their report in writing, it is ordered, that the same be recorded." This is, in our opinion, a confirmation of the report. No precise form of words is necessary to effect this; any thing which expresses the approbation of the court, to the action of the commissioners, is sufficient. It was not necessary that the court should have directed that a deed should be made to the purchasers, and it may have been a prudential course to withhold it, until the purchase money was paid. It certainly had the power to do so.

We have not thought it necessary, or proper, to enter on the inquiry, whether the power conferred by the Orphans' Court on the commissioners, was rightfully exercised by them in this case, so as to be obligatory on the heirs, as well as the purchaser, because, in our opinion, the vendee is not in a condition to raise that question. Having made the purchase, with knowledge of the facts, executed his notes for the purchase money, taken possession of the land, and permitted the sale to be confirmed by the Orphans' Court, without objection on his part, he cannot be permitted to deny, that those from whom he purchased, had power to sell.

It results from these views, that the court erred in its charge to the jury, and its judgment must therefore be reversed and the cause remanded.