# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

## APRIL TERM, 1858.

~~~~~~~~~~~~~~~

## HALLECK et al., EXECUTORS OF FOLSOM, v. GUY.

A sale of property, under an order of the Probate Court, is a judicial act, and therefore not within the Statute of Frauds.

A substitution of one bidder for another, at executor's sale, who fails to comply with the terms of sale, cannot effect the validity of the sale. The order directing the sale and the order confirming it, give vitality to the purchase.

A purchaser at executor's sale, under an order of the Probate Court, cannot refuse to pay the purchase-money on the ground that the notice of sale stated a good title, and that the title was not good. The sale was stated in the notice as a probate sale, the bidder knew its character, the effect of the deed, and is bound to examine the title for himself. In these sales, *caveat emptor* is the rule.

Where the terms of the sale were, one-half of the purchase-money cash, and the remainder in ninety days, with interest from date of sale, at the rate of one per cent. per month, and the purchaser elected to pay the whole amount down; *Held*, that the purchaser is entitled to a reduction for the interest on one-half of the purchase-money.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

A statement of the facts appears in the opinion of the Court.

*Whitcomb, Pringle & Felton,* for Appellant.
The defendant relies on the following grounds:

1. The contract of sale is not binding, because there was no subscribing of the contract by the plaintiffs or their agent.

2. That the defendant never bid for two of the lots included in the alleged contract.

3. The plaintiffs advertised to sell as and for a good title, and the title of their testator is not such a title as a Court of Equity would compel a purchaser to accept.

4. The decree is defective in entering credit for the whole amount of purchase-money on the day of sale.

1. It appears by the bill itself that there was no subscribing of the contract, such as is required by our statute. Compiled Laws, p. 200. The mere writing the names of the parties by the auctioneer is not such subscribing as the statute requires. There must be a subscribing as contradistinguished from signing. No mere writing the name of the parties in the body of the instrument satisfies the statute. There must be such subscribing as implies a view of the whole contract, and a signature at the bottom, including the whole. See Miller v. Pelletier, 4 ed. Ch. Rep., 102; Champlan v. Parish, 11 Paige, 411; Davis v. Shields, 26 Wend., 341. See last case for a thorough view of the point.

After the reasoning of the above cases, the point does not seem to require more argument, especially in view of the clause of our statute which provides that the memorandum of the auctioneer shall be sufficient in cases of goods, but is silent in reference to contracts for real estate. "*Expressio unius est exclusio alterius.*"

The plaintiffs seek to avoid this difficulty by taking the ground that this was a judicial sale, and not within the statute. But neither upon principle or authority can this be so. The doctrine contended for, they seek to derive from the case of Attorney-General v. Day, 1 Vesey, 218, where Lord Hardwicke held that a master's sale in equity was not within the statute.

The reason in those cases is obvious. In a sale ordered out of chancery, the Court is the vendor, and the Court is always bound to its own contracts. The master is merely the officer of the Court making the title, after the confirmation by the Court. Anderson v. Foulke, 2 Har. & Gill., 358.

The Court is strictly the vendor. The sale is a part of the proceedings in a case, and the purchaser makes himself a party thereto by his bidding. The Court holds him to his contract by committing him for contempt in case he refuses to comply with his bid. Wood v. Mann, 3 Summer, 326. The necessity for the statute is altogether wanting where the whole proceeding is conducted by the officers of a Court of Chancery, and fraud is out of the question. Now, all this reasoning fails in the case of a sale by executors. They are the agents of the will. They are the vendors. The Probate Court is not, in any sense, a vendor.

Nor can it enforce performance against a purchaser, by contempt, because the sale is the sale of the executor and not the sale of the Court.   See Smith v. Arnold, 5 Mason, 414.

It is true that a confirmation of sale by the Probate Court is required by our statute, but such a provision does not make the judicial sale of a Court of Chancery.   The Probate Court is a Court of inferior jurisdiction and of limited powers.   It does not summon all incumbrancers or persons in interest to settle their rights.   It has no concern with, and gives no protection to a purchaser.   It is simply the agent of the deceased to see that his interests are protected, and his wishes enforced.

At the confirmation it is not required to give notice of the hearing.   It cites no person to be present, and hence none are barred by its act.   It simply passes upon the regularity of the proceedings of the executors, whether they have sufficiently protected the interests of their testator.   The confirmation is a proceeding between the executors and the Court—merely an approval of them.   It has no further authority or scope.

Now, does such a confirmation bring the proceedings within the analogy of sales in chancery as described by Lord Hardwicke?   Clearly not, we contend.   The essential element of chancery sales is wanting here.   The purchaser is not reached by the proceedings in the case, his interests are not protected, he is in no sense a party, and cannot be held by any process in contempt.   In chancery sales a bill for specific performance is unnecessary.   The proceeding is a motion, the ground of the jurisdiction on motion against a purchaser being, that he has become a party to the action, and that the Court has sold to him.   If this were, properly speaking, a judicial sale, the plaintiffs would not be pursuing their present remedy in another Court.

The plaintiffs insist that there is no sale until the confirmation, because the executors could not be held liable in case of a rejection.   The premises are true, but the conclusion does not follow.   There is a contract of sale qualified always by the law, which allows the Court to confirm or reject.   That enters into the contract.   The executors could be sued in case they omitted to report their sale.   By the sale and a proper subscribing they bind themselves to the purchaser to report the sale to the Court and to convey to him, unless the Court refuses to confirm.

Certain Pennsylvania cases (4 Barr, Gunnison's adm'r,) have held that executor's sales are judicial sales and not within the statute.   But these decisions are based upon the analogy to sheriff's sales, which latter the Pennsylvania Courts, taking a wrong direction, have held to be judicial sales, and not within the statute.   Executor's sales are just as much judicial sales as sheriff's sales, but no more; and the great mass of authority is

against the doctrine that sheriff's sales are judicial sales, as admitted by the plaintiff's counsel in argument.

In Simonds v. Catlin, 2 Caines, p. 64, Chancellor Kent holds that sheriff's sales are within the statute, and says, *arguendo*, that probate sales are also within the statute.

But this Court seems to have already decided in Abell v. Calderwood, 4 Cal., p. 90, that a contract for the sale of lands is in all cases within the statute. The Court expressly rejects the reasoning of Lord Hardwicke, which led him to the doctrine that chancery sales are not within the statute. To dispense with the requirements of the statute here, would be to depart from a very salutary rule, laid down in Abell v. Calderwood, after mature reflection.

2. As to subdivisions eight and nine, of water-lots three hundred and sixty-seven, three hundred and sixty-eight, three hundred and seventy-five, and three hundred and seventy-six, the defendant insists that there is no valid agreement to bind him. Some days after the bidding he consented to take those lots, but on examination of the title he rejects them. He is not bound by the substitution. If this proceeding were in the course of a judicial sale, the original bidder would have been released on motion, and the new purchaser substituted. But this substitution is in no, degree analogous to that proceeding, and in fact shows conclusively the difference between these sales and the proper judicial sales.

Here, in the first place, is no release of the first bidder, which in the chancery proceeding would have been accomplished. The scratching out of the name of the first bidder by Mr. Billings, or Mr. Guy, or both of them, is not equivalent to releasing him on *motion*, nor is it effectual, perhaps, to bar him from claiming his bid. And in the second place, the substitute is not bound as a party, as he would have been by a motion in chancery, that he be substituted for the retiring bidder.

And again, this substitution did not make a sale at public auction, which the probate law requires. Defendant might have bid more or less at the sale, other parties might have bought. His agreement to take the lots was not in any sense a bid at public auction; it was a private sale. (See Heydenfeldt v. Pickering et al.) Here there was no pretence of any agency. The defendant was a new party, present himself at the sale, not bidding off these lots but consenting to take them three days afterwards, and when the original bidder had made default.

3. Appellant insists that the plaintiffs do not offer him such a title as a Court of Equity would compel a purchaser to accept.

In this question, the apparent difficulty in the way of the defendant is, that executors are merely trustees, and cannot convey more than the interest of their testator; and a purchaser is bound to know the law, that our statute provides that executors'

deeds shall be held to convey "all the right, title, and interest of the deceased." But the point of the defendant is, that they advertised to sell as and for a good title, and they cannot compel specific performance where they do not substantially comply with what they contract for. It is true that, ordinarily, the purchaser at an executor's sale gets nothing but the interest of the deceased, and has notice of that. But where the vendors, instead of advertising in the ordinary way to sell such interest, advertise to sell the land itself, thereby holding themselves out to sell a good title, the purchaser has a good right to presume one of two things: either that the testator by his will had made provision for the removal of incumbrances, and that they have accordingly perfected the title, or that they have examined the title, and for the purpose of making a good sale undertake to sell as and for a good title. If they advertise in the ordinary way to sell what they are really selling, viz.: "all the right, title, and interest of the deceased," purchasers are on their guard, and buy with notice. If they depart from that course, and advertise to sell the land itself, they are putting themselves in the position of persons selling at judicial sales, where the purchaser has a right to demand a good title.

In McDonald v. Hanson, 12 Ves., 277, the Master of the Rolls, Sir Wm. Grant, held, "If assignees in bankruptcy choose to advertise that they have not a good title, or that they will sell only such title as they have, that is another thing. But if they advertise in the common way, there is no reason why they should not be bound as other persons." Bill for specific performance dismissed.

In Smith v. Arnold, 5 Mason, 414, "the advertisement was of all the right and title of the intestate," and such is the form of advertisement where agents or trustees are selling, and do not wish to be held to convey a good title. See, also, Anderson v. Faulke, 2 Har. & Gill, 358.

The above case of McDonald v. Hanson, is a complete answer to the apparent difficulty above suggested, arising from the fact that executors cannot sell more than the interest of their testator. That was the sale of an assignee in bankruptcy, completely analogous to an executor's sale. An assignee, like an executor, is a special agent, who of course can sell no more than the bankrupt's title, and purchasers must ordinarily take notice of the limit of his power; but he is denied a specific performance where he has advertised as these executors have done, unless he gives a good title.

In Pope v. Simpson, 5 Vesey, 145, Lord Longborough held a contrary doctrine, and said that "purchasers have no right to expect more than that the assignees should deliver over such title that the bankrupt has," but the case has been repeatedly

repudiated and overruled.    See, particularly, the case of White v. Foljambe, 11 Vesey, 344.

Lord Eldon, after entering his protest against the doctrine of Pope v. Simpson, ("if," says he, "that case really does-contain any such doctrine,") goes on to say, "That assignees, under a commission of bankruptcy, may sell under a special contract such estate as the bankrupts had, I admit.    But if the assignees exhibit to sale a freehold estate of inheritance, not marking by the contract that they mean to sell nothing more than it shall turn out the bankrupt had, the agreement is to sell the inheritance, free from incumbrance; and there is no principle which can protect the assignees if they do not inform themselves before they propose a sale, what is the real nature of the title."

The true doctrine is well laid down in the note to White v. Foljambe, 11 Vesey, 337, as collected from the cases : "In general the assignees, like other vendors, are bound to make out a good title to the bankrupt's lands before they can compel a vendee to complete his purchase.    But the assignee may sell such title as the bankrupt had."    The same rule holds good in sales by guardians, a precisely analogous case.    See matter of Browning, 2 Paige, 64.    So, also, in all partition sales, the doctrine is universal, and is most reasonable.

We are at a loss to see in what respect an auction sale by an executor differs from an executor's private sale.    In reality, there is no more difference than between the public and private sale of an ordinary vendor.    We have, then, a case completely in point in Garnett v. Macon, 2 Brockenborough, p. 213, an elaborate case of Ch. J. Marshall, who says : "But the person who demands specific performance must be in a capacity to do substantially all that he has promised before he can entitle himself to the aid of this Court."    This was a sale by an executor. Specific performance denied on account of defect of title.    See, also, Veeder v. Fonda, 3 Paige, 97.

Now, let us see what defects of title will induce a Court of Equity to withhold its assistance from a suitor.    They will often refuse a specific performance, where an action for damages at law might be maintainable.    See Denne v. Cooper, 1 Ves., Jr., p. 565, note A.    The interposition to decree a specific performance is withheld, unless the Court is carrying into effect what was clearly the understanding and will of both parties.    The vendor's title, therefore, must be above suspicion.    "Whenever a rational doubt exists with respect to a title, a Court of Equity (though it inclines to think the title good) will not compel a purchaser to accept it.    See note 3 to Rase v. Callan, 5 Ves., Jr., 189 ; also, Lord Longborough's opinion in that case, and the notes of Summer, and cases collected.    There is much elaborate learning upon this subject in Sugden on Vendors, vol. 1, pp.*507 and *538.    He says that though a title is certainly either good or

bad, that a Court of Equity does not go into the consideration of that question, and examine completely into the merits of a title. It is enough to deny a specific performance if it finds that there is a doubt about the validity of the title, and repeatedly the Court rejects a title, which it believes to be good, if it is not a reasonably clear marketable title "—p.*538. " I should be very unwilling to make a man purchase a lawsuit "—Lord Longborough ; see, also, Jackson *v.* Edwards, 22 Wend., p. 509 ; Seymour *v.* De Lancey, 1 Hopk., 436.

4. The fourth point needs no argument. The Court is referred to the terms of sale as expressed in the bill, and to the prayer of the bill, and then to the form of the decree. " Half cash and half at ninety days, with interest at one per cent. per month," is very different from all cash.

*Gregory Yale* for Respondents.

Is the plea of the statute good ?

The provisions of the statute which have, it is said, been violated, and by reason of which, as charged by the defendant's counsel, in argument, though not in his pleadings, there is no cause of action on the part of the executors, are no doubt, though not specifically pointed out, the sixth and eighth sections of the act of the nineteenth of April, 1850, concerning fraudulent conveyances and contracts, as follows :

" Section six—No estate or interest in lands other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing."

" Section eight—Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in any lands, shall be void, unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made."

Under this statute, the argument is that no interest in land can be granted except by deed in writing; and it is true as a general principle that no interest can be granted, by deed in writing, unless the party granting it possesses it himself. The word " granted," in this section, is equivalent to "transfer;" and no one can transfer an interest unless he possesses it. He must own it before he can sell it.

So the word " contract," in the eighth section, refers to a party competent to enter into one for the sale of land. The

sixth section refers to an actual conveyance by deed—an executed agreement; the eighth, to an executory agreement binding the obligor to make a conveyance by deed.

But the question is, do these sections embrace the case of a sale of land by an administrator, or an agreement by an administrator to sell land? It is contended, by the respondents, that an administrator has no interest in the land of his intestate, by which he can "grant" an interest to another by a conveyance; nor can he make a "contract" for the sale of the land of his intestate.

This position embraces two distinct points:

1. That the administrator has no such interest in the land capable of being granted.

2. That he can make no contract to grant it.

The first point is established by the provisions of the statute to regulate descents and distributions, determining the legal title to be in the heir at law, subject to the payment of debts; and by the statute relating to the estate of deceased persons, requiring an administrator to make an inventory of the real estate, and authorizing the sale thereof by the Probate Court, for the payment of debts, in case the personal property is insufficient; and by the statute relating to the appointment of guardians, giving them the control of the real estate of their wards, under certain conditions; and also by the statute concerning escheated estates, where no heir capable of inheriting is left, vesting the estate in the state.

The interest of the administrator is special, and purely for the purpose of administration, rather as the representative of creditors, where there are any, than of the distributees. He must take into possession all the estates of the deceased, real and personal. (Act relating to estates, § 194.) And actions for the recovery of any property, real or personal, or for its possession, must be brought in the name of an administrator. § 195. But this authority to maintain an action for the recovery of real estate does not vest the title in the administrator. The title is still in the heir.

Chief Justice Marshall states the principle with his usual clearness, in a case from Ohio. He says, that "the lands of an intestate descend not to the administrator, but to the heir: they vest in him, liable, it is true, to the debts of his ancestor, and subject to be sold for those debts. The administrator has no estate in the land, but a power to sell under the authority of the Court of Common Pleas." Bank of Hamilton v. Dudley's Lessee, 2 Pet., 522–3.

The Court has followed the common law principle recognized by Chief Justice Marshall, and extended its operation so as to embrace personal property as well as real. Beckett v. Selover, 7 Cal. R. 215.

The special interest of the administrator as thus solemnly adjudicated is nothing more, as respects either the real or personal estate, than a lien in behalf of creditors, which he asserts as against the title of the heir, upon a given state of facts, and in the manner specially pointed out by law.

The same doctrine is applicable to executors, except where they have the authority to sell; and then they are but trustees, whose authority is limited by the terms of the testament.

When a devise of real estate is made, the devisee takes the title, under the will, subject to the debts and charges of the devisor.

Even in a case where the testator devised real estate subject to mortages, to his executors in trust, to sell the same and divide the proceeds among his children, it was held that the executors had no estate in the land, but a mere power in trust, and that all the devisees were necessary parties to a suit against the executors respecting such real estate. Campbell v. Johnson et al. 2 Sand. Ch., 149.

In this case there is no pretence that the respondents derived any greater power over the land by the will of Folsom than in an ordinary case, where the authority of an executor over the real estate is limited by law.

An administrator or executor, then, having no interest to grant by deed in writing, under the sixth section of the Statute of Frauds, the other branch of the case is presented.

2.  That an administrator can make no executory contract within the eighth section, to grant the real estate of his intestate.

It may be stated as a general principle, that an administrator can make no contract to bind the assets of the estate.

In Alsop v. Mather, 8 Conn., 586, it is stated as a general rule that " an administrator is an agent who is created, and whose powers and duties are prescribed by law. The extent of his liability is defined by the condition of his bond." In The Bank of La. v Dejean, 12 Rob., 19, the Court say:

"We have repeatedly held that, as a general principle, an administrator cannot create any liability on the estate by his contracts." Wightman v. Townroe, 1 Maule & S., 416, contains an opinion of Lord Ellenborough, illustrative of the general common law principle. Wise v. Smith & Buchanan, 4 Gill. & John., 299, 304; Callis v. Tolson's Executors, 6 Ib., 91; Gilman v. Weir, 8 Ala., 72; and Nelson v. Woodbury, 1 Greenl., 230, are further illustrations of the general rule.

If an administrator can make no contract to bind the asssets in his hands, how can he make an executory agreement in writing to sell the real estate of his intestate under the eighth section, to a particular individual? The very point has been decided in respect to such a contract, under the Statute of Frands,

13

in the case of King *v.* Gunnison's Adr., 4 Barr, 171.     Judge Coulter, in the opinion delivered by the Court, says :

" A written contract between the administrator and the purchaser would be without value before the sale was confirmed, and totally useless when it was confirmed.     The statute was not designed to operate on judicial sales, but upon contracts in the current of business, and sales between individuals."

No other case has been noticed where such an objection has been made to a probate sale till the present.     In New York, it has been uniformly held, that such a contract would be void for two reasons :

1. The administrator has no authority to make it ; and,

2. Such a contract would be void as against the policy of the law, in preventing fair bidding at a public sale.

In the case of The Overseers of Bridgewater *v.* The Overseers of Brookfield, 3 Cow., 299, the single question was, whether an equitable estate had been acquired by virtue of a contract with an administratrix, so as to entitle a party to a settlement.

In the case of Herrick *v.* Grow & Brown, 5 Wend., 579, the validity of a bond of an administrator for the sale of land was directly presented.

The authorities referred to by the Courts in the two cases immediately preceding, to sustain their position that such contracts were against the policy of the law, and void, because their direct tendency was to prevent fair competition at a public sale, were Jones *v.* Caswell, 3 John. Cas., 29 ; Doolin *v.* Ward, 6 John., 196, and Wilbur *v.* How., 8 John., 346.

So, where an act of assembly authorized a sale of real estate by a trustee, to be appointed by the Orphan's Court, the Court to prescribe the time, place, and manner of sale, it was held that the act contemplated a future sale, and also a public sale, and that a private sale before the passage of the act, was invalid, notwithstanding it was approved by the Orphan's Court.     Ellet *v.* Paxson, 2 W. & Serg., 418.

If the statute does not apply to the case of an administrator, because he is incompetent to make the contract, does it apply to sales by order of the Probate Court ?

This is only the same inquiry in another form ; and the adjudications upon this point may be treated only as a different class of cases upon the same identical subject.     It is contended, then, that the Statute of Frauds does not apply to such sales ; but that an administrator's sale, under our statute, by order of the Probate Judge, is not within the Statute of Frauds.

The proceedings necessary to be taken by an administrator to procure the order of the Probate Court, to sell the real estate of his intestate for the payment of debts, and the action of the administrator under the order, including the conveyance to be made by him after the confirmation, may be described as the means

prescribed by law for divesting the heirs of their title to the land. This is the result and the only means by which it can be accomplished; although the primary object is to pay the debts of the intestate. It is a proceeding *in rem* against the estate of the decedent, and jurisdiction attaches *quoad* the thing. Duval's Heirs *v.* The P. & M. Bank, 10 Ala., 652.

The proceeding being in its very nature special, under a particular law, a general statute, like the act to prevent frauds and perjuries, requiring contracts for the sale of land to be in writing, has no application to it.

The very first section of the seventh subdivision of the act relating to estates, under the head of " sales of property by executors or administrators," contains a declaration inhibiting all sales made by an administrator, unless under the order of the Probate Court. This section alone is a sufficient answer to the whole question about the Statute of Frauds. The language is:

" No sale of any property of an estate shall be valid, unless made under an order of the Probate Court." § 148, W. Digest, 406.

Petitions for the sale of personal property, by the administration, must be in writing, (§ 149,) and the sale must be at public auction, unless, for good reason shown, the Probate Judge shall order a private sale, but no private sale shall be effectual for any purpose until the same shall be approved by the Probate Judge. § 152.

This Court makes no distinction between the title to the real and the personal property. The title to each kind of property is in the heir and not in the administrator. Beckett *v.* Selover, 7 Cal. R.

But when the personal property in the hands of the administrator shall be insufficient to pay the allowance of the family and all debts and charges of the administration, the administrator may sell the real estate for that purpose, by order of the County Judge. § 154.

An order to sell real estate, without making the heirs a party, would be a nullity. Bloom *v.* Burstick, 1 Hill. Should the administrator neglect to apply for an order of sale whenever it may be necessary, any person interested in the estate may make application therefor, in the same manner as an administrator— notice being given to him before the hearing. § 164.

If the argument of the defendant's counsel is correct in principle, that a sale of an administrator is void, unless he make a contract in writing with the purchaser *in futuro*, it applies also to a sale under this section, when the application is made by a creditor. The contract would then have to be made with a creditor, he binding himself to sell that which he does not possess, and the purchaser, of course, agreeing to buy that particular thing. The *reductio ad absurdum* could not go further; so

completely evident is it, that the sale is under judicial author-
ity, exercised in a prescribed form, and not the act of an indi-
vidual.

Of the proceedings to confirm this immediate sale to the de-
fendant, the complaint avers that he had notice, and made ob-
jections thereto, and that the same was confirmed to him, as the
purchaser, by order of the Court, on the twenty-ninth of De-
cember, 1856. These averments are not denied in the answer.

To recur to the inquiry, then, after having referred to the pre-
scribed method to be adopted by the Court, upon the applica-
tion of the administrator to divest the heir of title to the estate,
by subjecting it to the lien of his ancestor's debts, does the Stat-
ute of Frauds apply to such sale?

The inquiry is already answered in the negative, where it is
first made. The class of authorities there alluded to establish
the point that these sales are judicial, and not within the Stat-
ute of Frauds.

Chief Justice Marshall's opinion has already been cited, to
show that the title of the real estate is in the heir, and not in
the administrator. He says, in the same case, and in the same
immediate connection, that the order of the Court is a pre-re-
quisite, indispensable to the very exercise of the power of the
administrator to sell. In that case, the law conferring jurisdic-
tion upon the Court to authorize the sale of real estate was re-
pealed, between the application by the administrator and the
sale. The administrator, nevertheless, proceeded to sell. Upon
that state of facts the Supreme Court held that, if the law which
authorized the Court to make the order be repealed, the power
to sell can never come into existence. The repeal of such a law
divests no vested estate, but is the exercise of legislative power
which every Legislature possesses. "The mode of subjecting
the property of a debtor to the demands of a creditor must al-
ways depend on the wisdom of the Legislature." The deed of
the administrator was held to be void. Bank of Hamilton v.
Dudley's Heirs, 2 Pet., 523.

The same Court, in Grignon's Lessee v. Aster et al., 2 How.,
343, say: "There are no judicial sales around which greater
sanctity ought to be placed, than those made of the estates of
of decedents, by order of those Courts to whom the laws of the
States confide full jurisdiction over the subjects." This language
is repeated, with emphasis, by Mr. Justice Daniel, in the judg-
ment of the Supreme Court, in Sargeant et al. v. The State Bank
of Indiana, 12 How., 386, 387.

In Pennsylvania, numerous cases occur, pronuncing the sales
of Orphan's Courts to be judicial. In King v. Gunnison's Ad-
ministrator, 4 Barr, 172, Mr. Justice Coulter says: "It has been
decided, by this Court, that a sale made by an administrator, in
pursuance of an order of the Orphan's Court, is a judicial sale,

and that the rule of *caveat emptor* applies." In Lockhart *v.* John, 7 Barr, 139, the same Justice, in referring to the irregularities of such a sale, says : " None of these acts, nor any other act on the subject, declares that the sale shall be void for such omissions, and, as the Court had undoubted jurisdiction to decree a sale, we cannot hold it to be void, but must consider it valid, as a judicial sale, made under a decree of the Orphan's Court, having complete and full jurisdiction, and not subject to reversal, in a collateral suit." In an earlier case, decided by Mr. Justice Rogers, in 1835, where it was held that there was no warranty at a judicial sale, he says : " But, it is said that a sale by the administrator is not a judicial sale. But, we conceive that a sale by an administrator, under an order of the Orphan's Court, for the payment of debts, is a judicial sale ; and that the principles which govern the one are applicable to the other. See Bashore *v.* Whister, 3 Watts, 494.

The doctrine of this case is expressly affirmed by Mr. Justice Rogers, in 1849. Robb *v.* Mann, 1 Jones, 305.

In Louisiana, the sale of the property of a succession is expressly held to be a judicial sale. Jones' Administrator *v.* Read et ux., 1 La. An. R., 200.

In Texas, such a sale is declared to be judicial, and to operate *in rem.* Lynch *v.* Baxter, 4 Tex., 437.

In Alabama, where the vendee, under a sale by commissioners appointed by the Orphan's Court, attempted to get rid of his liability under a sale, the Court say : This case stands upon higher grounds than the inability of the vendee to take advantage of the defective execution of a power, conceding that such was the fact, against the will of the agent's principal, desirous to affirm it. This is a judicial sale. It is, in effect, a sale made by the Orphan's Court, acting for the heirs and those interested in the estate, and the rule *caveat emptor* applies in all its rigor." Worthington's Adm'r *v.* McRoberts, 9 Ala., 300–1.

The opinion of Judge Story, in Smith *v.* Arnold, 5 Mason, 420, has been referred to by the defendant's counsel to establish a contrary doctrine. The principle deduced from the case is in perfect harmony with the other authorities. Had the administrator been required by the statute of Rhode Island, under which the decision was made, to report his sale to the Probate Court for confirmation, it would, in the opinion of Judge Story, have been a judicial sale. He says :

" It is unnecessary to rely upon the analogies of chancery practice, in order to make the sale of an administrator, under an order of the Probate Court, a judicial act. The statute is alone sufficient for that purpose. Such cases, therefore, as the Attorney General *v.* Day, 1 Vesey, Sen., are not relied upon as furnishing any reason for the rule."

The statute of this State makes the confirmation of the sale by

the Court indispensable. The order to the administrator is the pre-requisite, and without the subsequent sanction of the Court of the act of the administrator, it is simply a nullity. So held in Rea *v.* McEachron, 13 Wend., 465, under the New York statute, although it was offered to be proved that the sale was *bona fide ;* that a full and fair price was paid by the purchaser, and that the proceeds were applied to the payment of the debts of the intestate. In that case, the heirs recovered the real estate in an action of ejectment. And a failure on the part of the Court to confirm the sale, under the statute in Alabama, will annul what has been done by the administrator, and release the purchaser from his bid, in the same manner as if the Court had so declared *in totidem verbis.* Duval's Heirs *v.* The P. and M. Bank, 10 Ala., 636.

Unless, as in New York, the Chancellor had the right, under the statute, to confirm the sale upon the application of the purchaser, in case the Surrogate neglected to do so. 13 Wend., 465.

The remaining question relates to the objection to the form of the decree, requiring the defendant to credit the mortgage as of the day of sale.

When was the sale made? On the 14th of November, 1856, and confirmed on the 29th of December. To what day did the confirmation relate? Certainly to the day of sale. The printed terms of sale, as attached to the transcript, show that the purchasers became entitled to the rent from the day of sale, when confirmed. This fixed the ownership, and was a matter of express contract by the defendant as a purchaser.

Such is the rule recognized at law and in chancery. In determining this question upon an action of assumpsit for rent, by a purchaser under a sale, Judge Tucker, President of the Court of Appeals in Virginia, says, he had not the slightest doubt of the right of the purchaser to recover the rent. Taylor *v.* Cooper, 10 Leigh, 318. He says, that where the sale is confirmed, "the confirmation relates back to the sale, and the purchaser is entitled to everything he would have been entitled to, if the confirmation and conveyance of title had been cotemporaneous with the sale." This was a sale in chancery; but the same rule applies to an administrator's sale. The question is examined at length by Mr. Justice Rogers, in 1 Jones, 304, and he comes to the conclusion, that a purchaser is the owner from the day of sale; and should damage ensue to the property by fire, the purchaser, and not the estate, would bear the loss.

The confirmation of the sale fixed the liability of the defendant, and his effort now to get rid of that liability, amounts, in effect, to a collateral impeachment of the decree of confirmation. This, he is not permitted to do. The authorities are overwhelming, denying the party the liberty of impeaching the decree of a Probate Court in a collateral proceeding. Grignon's Lessee *v.* Aster, 2 How., is an instance.

In Fox v. Mench, it is expressly held, that "if the purchaser has a complaint, he ought to make it to the Orphan's Court before confirmation." 3 W. & Serg., 446.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This was a bill to compel the defendant to pay the sum bid by him for certain lots sold by plaintiffs, as executors of Joseph L. Folsom, deceased, under an order of the Probate Court. The Court below rendered a decree for the plaintiffs, and the defendant appealed.

The first point made by the defendant is that the sale was not binding because there was no subscribing of the contract by the plaintiffs or their agent. The fate of this objection depends upon the question whether sales by executors and administrators, under our probate system, are judicial or ministerial. If judicial, the contract need not be in writing, subscribed by the parties. The Statute of Frauds does not apply to such a case, the sale being made by the Court.

The administrator, or executor, is under the control of the Probate Court. In the sale of property he is the moving party in behalf of creditors, but acts subject to the orders of the Court.

The order of the Probate Court directing the sale of the real estate of the deceased, is a judicial act. It is, in substance, similar to a decree in chancery for the sale of specific property. The order of the Probate Court may not, in specific terms, describe the exact property to be sold; but it still has reference to the property already described upon its records, and is therefore, in effect, the same as a decree in chancery. The administrator, or executor, in making the sale, does the *particular* act which the order of the Court itself directs him to perform. The Court determines that specific property *must* be sold, and, by its order, directs the administrator to sell the same according to law. The mode of the sale is pointed out by express statute. When sold, the report of the sale is made by the administrator to the Court, and unless confirmed by order of the Court there is no binding sale, and no title can pass to the purchaser. To be valid, the sale must first be ordered by the Court, and afterwards confirmed by it. The order for the sale, and the order of confirmation, are both judicial acts; and these two concurring, make the sale a judicial sale, and, therefore, not within the Statute of Frauds. In making the sale itself, the administrator acts for the Court and under its orders. He receives the bids and returns them like a Master in Chancery, into the Court for its consideration. The Probate Court is the guardian of the rights of all parties interested in the estate, and acts for all.

But, in a judgment at law, there is no direction by the Court itself that any specific property shall be sold. Judgment is

given for a specified sum, for which execution *may* issue, and such property of the defendant sold as the sheriff may levy upon. What particular property will be sold, depends upon the ministerial act of the sheriff; and the sale is made by him and the title passed to the purchaser, without the action or confirmation of the Court.

It is true that there is a difference in the *mode* of enforcing a sale ordered by a Court of Chancery, and that of a sale by order of the Probate Court. But this difference in the mere mode does not affect the character of the sale itself. When a sale is made under a decree in chancery, the bidder may be committed for contempt if he refuses to comply with his bid. (Woods *v.* Mann, 3 Sumner, 326.) The Court can summon all parties interested and settle their conflicting claims to the property itself.

If we concede that the Probate Court cannot commit the bidder for contempt, when he fails to comply with his bid, this does not change the character of the sale. Nor does the fact that the Probate Court cannot settle conflicting claims to the property have any such effect, for the reason that the Court can only order a sale of the interest of the deceased.

The counsel for defendant has referred us to the case of Smith *v.* Arnold, (5 Mason's R., 414.) In that case, Mr. Justice Story held that a sale by an administrator, under the law of Rhode Island, was not a judicial sale. But the principle upon which the decision rested, and the reason given by the Judge, sustain the view we have taken.

"In the case of an administrator, the authority to sell is, indeed, granted by a Court of Law. But the Court, when it has once authorized the administrator to sell, is *functus officio*. The proceedings of the administrator never come before the Court for examination or confirmation. They are matters *in pais*, over which the Court has no control."

There is doubtless some conflict of authority in reference to the character of probate sales of real estate. But under our system, which requires both the order of sale and the confirmation by the Court, to make the sale valid, we think there can be no reasonable doubt. These sales are considered judicial by the following authorities: 2 How. U. S., 312; 12 How. U. S., 386; 4 Barr, 172; 1 Janes, 305; 1 La. An. Rep., 200; 4 Texas, 437; 9 Ala., 300. The case of Abel *v.* Calderwood, 4 Cal. Rep., 90, is not opposed to this view.

The second point made by the counsel of defendant is that the defendant never bid for two of the lots included in the alleged sale.

It appears that these two lots were struck off to another bidder, who failed to comply with the terms of the sale; and, that his name was erased on the list of the auctioneer, and the de-

Halleck *v.* Guy.

fendant wrote his own name in the place of that of the first bidder. This was done about three days after the bidding, and before the report of the sale was made to the Court and confirmed.

We can see nothing in this objection. The mere substitution of one purchaser for another cannot affect the validity of the sale. The order directing the sale, and the order confirming it, give vitality to the purchase. These orders are both required to be recorded. (§ 171.)

The third objection made by the defendant is, that the plaintiffs advertised to sell as and for a good title, and that the title was defective. The notice of sale stated that the executors, being thereto authorized by order of the Probate Court, would sell to the highest bidder, at a time and place stated, "the within described property, being part of the real estate of the said Joseph L. Folsom, deceased," describing the property, and stating the terms of sale.

The only effect of an administrator's deed is to convey to the purchaser the title of the deceased. Such a deed can contain no warranty of the title. The purchaser must know the law. The notice was of a probate sale. The bidder, therefore, knew the character of the sale, the effect of the deed, and was bound to examine the title for himself. The language of the notice put him upon his guard. In these sales, *caveat emptor* is the rule. (4 Conn., 513; 13 S. & M., 101; 9 Ala., 299; 5 Black., 277; 4 Barr, 172; 9 Texas, 553; 3 Watts & S., 446.)

The fourth and last objection made by the appellant is to the form of the decree. The price of the property purchased by the defendant amounted to fifteen thousand eight hundred and fifty dollars. The defendant held a mortgage upon the lots, and the amount of his mortgage exceeded the amount of his bids. The mortgage-debt was drawing two and a half per cent. interest per month. By the terms of the sale, one-half of the purchase-money was to have been cash in hand, and the remainder in ninety days, with interest from the date of the sale, at the rate of one per cent. per month. The bidder had the privilege to pay the whole sum on the day of sale. The decree of the Court directed the entire amount to be credited upon the mortgage, as a payment made on the day of sale. This we think was an error.

The bidder who elected to pay promptly, was entitled to a deduction for the interest on one-half the purchase money. The defendant's mortgage-debt was drawing two and a half per cent. per month, and the proceeds of the sale were dedicated to the payment of his debt. But, by the terms of the sale, he was compelled to give more for the property than he otherwise would have been. The executors gave him property in place of *cash*, but they charged him *cash* instead of *credit* prices for it, when, at the same time, the sale was partly on credit.

The decree must be modified, and the case remanded to the Court below, with directions to modify the decree in accordance with this opinion, without costs on appeal.