McVey, Curator, v. McVey, et al.

————o————

ABSOLEM McVey, Curator, &c., Appellant, *vs.* McVey, PHILIPS and VEST, *et al.*, Respondents.

1. *Administrator— Appraisement—Affidavit—Signatures—Construction of statute.*—An affidavit made and signed by three appraisers appointed to appraise land about to be sold by an administrator, (see W. S., 97, § 29,) with the appraisement immediately following and attached thereto, commencing " we appraise as follows" etc., is a sufficient compliance with that section although the signatures were not also appended to the appraisement.

2. *Guardians and Curators—Minors, lands of—Sale of—Probate Court.*—Probate or County Courts have power to order guardians or curators'to sell the lands of minors at private sale. That power is not taken away by the statute of 1855, touching curators and guardians. (R. C., 1855, p. 826–7, §§ 25, 26, 27). The object of this statute was not to take away from those courts any existing powers in ordering the sale, but merely to regulate the proceedings of the curator or guardian in conducting the sale.

3. *Construction of statute—Repeals by implication, etc.*—The settled rule of construction is, that if by any fair interpretation, all the sections of the law bearing on a given topic can stand together, then there is no repeal by implication.

McVey, Curator, v. McVey, et al.

4. *Construction of statute—General affirmative statute does not abrogate particular one, except etc.*—A later statute which is general and affirmative, does not abrogate a former one which is particular, unless negative words are used, or unless the two acts are irreconcilably inconsistent or repugnant.

5. *Curator—Sale of ward's estate—Appeal from county to Circuit Court—Will lie, when.*—In case of a judgment of the County Court approving a sale by a curator of his ward's estate, the statute contains no prohibition of the right of appeal, nor is there any provision regulating it. *Held*, that in such cases, an appeal will lie from the County to the Circuit Court; but that the only effect of the appeal will be to take the record of the County Court up to the Appellate Court in the same manner and to the same extent is in cases of *Certiorari*. (Snoddy vs. Pettis County, 45 Mo., 36, and Kenrick vs. Cole, 46 Mo., 85 commented on.)

6. *Circuit Court—Judgment of, disapproving sale by guardian—Appeal from to Supreme Court will lie.*—On appeal to the Circuit Court from the judgment of the County Court approving of the sale of a ward's estate by his curator, a judgment of the Circuit Court disapproving the sale, will authorize an appeal therefrom to the Supreme Court. Though the Circuit Court judgment is not a complete and final disposition of the cause, yet it is final so far as that court is concerned and that is sufficient.

7. *Guardian—Sale of Ward's land—Report concerning—Approval of, by Circuit Court—May be made how long after sale.*—Where a guardian sold the land of his ward in March 1856, and filed his report with the County Court at the April term of that year, the mere fact that the report remained in abeyance and undetermined for several years, would not render its approval at the end of that time, if otherwise regular, unauthorized and invalid. Until there is a final judgment and order approving the sale, the functions of the curator are not final; and the purchaser can get no deed and acquire no title.

### *Appeal from Moniteau Circuit Court.*

*Napton*, for Appellant.

1. No appeal lies from the judgment of a County Court approving the sale by a Curator of his wards' lands. (See chapter 116 of General statutes, page 465, which contains the whole law on this point.) Section 50, page 473, allows appeals from a final settlement, but no appeal in any other matter. See also section 7, of chapter 137, General Statutes, 556; also section 2, of chapter 136, General Statutes, 550, neither of which gives the right in this case, nor does the administration law. (Kenrick vs. Cole, 46 Mo., 85 ; Boggs vs. Brooks, 45 Mo., 232 ; State *ex. rel.*, Hixon vs. Lafayette county, 41 Mo., 39 ; St. Louis vs. Tiefel, 42 Mo., 590.)

2. The County Court had the power to order the sale at private or public sale. (See Section 22, Guardians and Curators, Rev. Laws Mo. 1845, page 551, under which this sale was made. See also in pari materia, Section 8, Guardians and Curators, Revised Laws, 1835, page 295, and Revision of Laws of Mo., 1825; R. C. 1855, 826, § 24; Gen. Stat., 1865, 460, § 28; Robert vs. Casey, 25 Mo., 585.)

3. This power of the County Court to order the sale of a minor's real estate at "private or public sale," was not repealed by the amendatory act of 1851. (R. C. 1855, pp. 827 and 828, § §. 25–29, which are a transcript of the amendatory act of 1851.) There was no express or implied repeal. (St. Louis vs. Independent Insurance Company of Massachusetts, 47 Mo., 149; Deters vs. Renick, 37 Mo., 597; Vastine vs. Probate Court, 38 Mo., 529; State ex. rel., &c., vs. Macon County Court, 41 Mo., 453; St. Louis vs. Alexander, 23 Mo.; 483. See title, Administration, Revision 1825, pp. 107, 109, 110, §§ 40, 44, 45 and 46; Revision 1835, pp. 52 and 53, Art. 3, §§ 13, 20 and 22; Revision 1845, pp. 86, 87, 88, Art. 3, §§ 25, 29, 32 and 34; Revision 1855, pp. 146-7, Art. 3, §§ 26, 30, 33 and 35.)

4. The objection that the certificate of appraisement is .not signed is the merest technical quibble. The statute in this regard is merely directory, the object being to identify the appraisement as the work of the appraisers, and the appraisement being on the same paper with the affidavit signed and sworn to by the appraisers, constituted a certificate which was literally under their hands. In fact, all the requisitions of the statute were substantially complied with, and that was all that was necessary. (See opinion of Wagner, Chief Justice, overruling motion for a re-hearing in Strouse vs. Drennan, 41 Mo., 300.)

5. In this case, the Curatorship was still pending, and the matter of this sale was still pending as a part of the Curatorship, when application was made at the May term, 1869, of the County Court to approve the sale, and the County Court, notwithstanding the lapse of time after the sale, had jurisdic to act on the report and approve the sale.

6. The Circuit Court in hearing this case on the record, sit as a Court of Errors, and from its judgment of reversal, an appeal lies to this Court. (See Strouse vs. Drennan, 41 Mo., 289, and cases there cited.) Or, if it be assumed that the Circuit Court had no jurisdiction to hear the case, then its action, in overruling the motion to dismiss the appeal from the County Court, was a final judgment, from which a writ of error, or appeal, lies to this Court.

*R. Hicks*, for Respondent.

The County Court had no jurisdiction to appoint McVey Curator of the estate of said minors which they derived from their mother.

It is said in the case of Commissioners of Talladida vs. Thompson, 15 Alabama, 139, that it requires no citation of authorities, to show that the County Court is a court of special and limited jurisdiction, that its record must discover and disclose every fact necessary and essential to the validity of its orders and judgments.

Although the County Court had by law exclusive original jurisdiction of appointing and displacing guardians, orphans, minors, and persons of unsound minds, &c.; yet a general jurisdiction over the subject matter, was not enough. The court could only have had it, in this case, by the existence of those preliminary facts that are specified in the statute. (Potwines Appeal, 31 Conn., 383 ; Bullymore vs. Cooper, 46 N. Y., 244 ; Small vs. Pennell, 31 Maine, 270 ; Overseers vs. Gullifer, 49 Maine, 360.)

The power to hear and determine is jurisdiction. (Fithian vs. Monks, 43 Mo., 502.) But before this power can be affirmed to exist in this case, the record must show the existence of the facts specified in some one of said sections, 6 or 7. (Sheldon vs. Newton, 3 Ohio St., 498 ; 12 Ohio, 273.)

And it is a fundamental rule that no court can obtain jurisdiction by the mere assertion of it, or by declaring that it has it. (McMinne vs. Whelan, 27 Cal., 314.)

And the doings of the County Court in this case were in-

effectual, and a nullity, inasmuch as the court had no authority to commence. (Small vs. Pennell, 31 Maine, 270.)

The record and proceedings in this case, do not disclose such a state of facts as authorized the appointment of McVey, as Curator or guardian under the 2nd section of the act. Nor does the record disclose a state of facts, that authorized the court to appoint him "Curator" under the 6th section of the act.

The 7th section of the act provides, "Whenever the County Court shall be satisfied, that it will be for the advantage of minors to appoint a Curator of the estate, different from that of the guardian of the person, it shall be lawful to make such appointment for minors under the age of fourteen years, and to all those over that age, to make such choice."

Now the record and proceedings do not disclose a state of facts, that authorized the court to appoint a Curator different from the guardian of the person, nor did the court make any such appointment. Under this section the court was not authorized to appoint a "Curator" for part of the estate of said minors. It must have been for the whole of the estate of said minors, from whatever source derived.

The order of appointment would seem to indicate, that the court proceeded under the 6th section of the act. But the record fails to show that he was wasting and mismanaging the estate.

And, if the court had so found, there was no warrant in that section to appoint him Curator. Such an appointment would have been in direct violation of the statute. (Sawyer vs. Knowles, 33 Maine, 210.)

Before the court can in any case order the sale of real estate of minors for their education, it must have jurisdiction of the persons of the minors and their estate, but at the time the court appointed McVey Curator, it had no jurisdiction over either the persons or estate of said minors. The court could only have obtained jurisdiction over the persons and estates of said minors through a legally constituted guardian, one that had had the legal custody and control of their estate. The court had no authority to appoint, and never did appoint

McVey guardian for said minors. (Maxsom's lessee vs. Sawyer, 12 Ohio, 207; Stewart vs. Morrison, 38 Miss., 417; Graham vs. Haughtalling, 1 Vroom, 552; Hall vs. Lay, 2 Ala., 529; Shanks vs. Seamond, 24 Iowa., 131.)

Nor did McVey under the first section of the act, ever give security as other guardians. The giving of the security in the manner required by the first section of the act, was the only way in which he could obtain the legal custody and control of said real estate, and become the guardian thereof. (McCarty vs. Rountree, 19 Mo., 345.)

Now when the 7th section speaks of appointing a curator different from the guardian of the person, such a guardian was intended as the court has jurisdiction over, and one that has the care, custody and control of both person and estate. (Graham vs. Haughtalling, 1 Vroom, 552; Penfield vs. Savage, 2 Conn., 386; Shanks vs. Seamonds, 24 Iowa, 131.)

And as McVey had not given bond under the first section, there was no guardian of the estate and the appointment as curator void. (Maxsom's lessee vs. Sawyer, 12 Ohio, 208.)

Before an appointment of a curator for the estate of the minors, under the 7th section, it was essential that there should have been a legal guardian of the estate and persons of the minors, and such appointee must have been a different person from the guardian of the persons and estate. (Sawyer vs. Knowles, 33 Maine, 210.)

A father as natural guardian is not appointed, it results to him by operation of law, and a guardian by nature is guardian of the person only and not of the estate. The County Court had no authority to appoint a guardian for a minor during the life-time of the father. (1 Halst. Digest, 507, 807, Opinion of Chancellor Williamson; Hall vs. Lay, 2 Ala., 529; Stewart vs. Morrison's Ex., 28 Miss., 418.)

The very language of the statute itself shows that the natural guardian, unless he had given security as other guardians under the statute, was not guardian of the estate of the minors or such a guardian as the court had any jurisdiction over.

But the petition, record and proceedings, do not disclose

facts to authorize the court to make the order, without a state-
ment that the father had not the ability to educate the minors
the court had no jurisdiction to proceed; and it may be stated
as undeniable, that if the father is living and of sufficient ability
to educate his children, the child's property cannot be applied
for that purpose. (Tyler on Infancy and Coverture, 289, and
cases there cited.)

We are not in court in a collateral proceeding attacking
the record   We have been brought in to show cause why a re-
port of sale, made thirteen years before the report was offered,
shall not be confirmed.   We ask the court to place itself in
the situation the County Court was, &c.

*Phillips & Vest*, for Respondent.

I. No appeal lies to this Court from the judgment of the
Circuit Court of Moniteau county disapproving the Curator's
report of sale.

The judgment of disapproval in case of a sale of real es
tate by an Administrator or Curator, requires that the Admin-
istrator or Curator shall proceed to make another sale, and
this is not a final judgment from which an appeal can be
taken.

In Speck vs. Wohlein, (32 Mo., 124) the court used the fol-
lowing language: "It is plain to be seen, that until a sale of
the estate proposed to be sold is approved by the court, it
still retains its power and jurisdiction over the subject of the
proceedings, and while this is the case, it cannot be said that
there has been any final decision.   It may be likened to the
judgment of a court granting a new trial, which it requires
the citing of no authority to prove is not such a final decision
as may be appealed from, or to the refusal of a Probate Court
to order distribution, which has been held by this court not
to be such a final decision as may be appealed from. "

This decision is fatal to the case at bar.

II. If this court should entertain jurisdiction of the cause,
then we contend that the action of the Circuit Court in over-
ruling the motion of Appellant to dismiss the appeal from the
County Court, was proper and constitutes no error.   (County

of Boone vs. Corlew, 3 Mo., 12 ; St. Louis vs. Sparks, 11 Mo., 201 ; Lewis vs. Nuckolls, 26 Mo., 278 ; Lacey vs. Williams, 27 Mo., 280 ; Hall vs. County Court of Audrain, 27Mo., 329 ; County of Cooper vs. Geyer, 19 Mo., 257 ; County of St. Louis vs. Lind, 42 Mo., 348.)

It will be seen from these decisions, extending over a period of thirty years, and under statutes from 1825 to 1865, that the Supreme Court has invariably recognized as correct the practice of reviewing on appeal in the Circuit Courts, the record of the County Court when no mode of appeal was prescribed by statute. A trial *de novo* in the Circuit Court has been ruled to be improper, but the Appellant can be heard upon the record.

III. The Circuit Court committed no error in disapproving the report of sale made by the Curator.

The statute under which the proceedings of the Curator were had, provides for the appraisement of the land, prior to sale, and that at the next term of the County Court after such sale, there shall be a full report of the proceedings, verified by affidavits.

In this case not a single provision of the statute was complied with. There was no appraisement of the land sold, as shown by the record. The Curator filed his petition at the February Term, 1856, of the Pettis County Court, for the sale of his ward's lands, and on the same day the Court made an order of sale. No notice was given the heirs or others, and during the same term of court the Curator filed his report, and on the same day it was approved. Upon this state of facts there can be no question that the sale was illegal. (Strouse vs. Drennan, 41 Mo., 289 ; Valle vs. Fleming, 19 Mo., 454 ; Robert vs. Casey, 25 Mo., 584.)

IV. It is claimed by Appellant that this sale can now be approved *thirteen* years after it was made, and after the heirs are all of age, and an expression of Judge Scott, in Speck vs. Wohlein, is seized upon to sustain this position.

In reply, we simply wish to ask our opponent one question, viz:

The statute provides that, "If the court refuse to affirm the report, the order of sale shall thereupon be renewed, and the same proceedings be had as upon the original order." Now in this case, if the County Court had refused to affirm the report, how could the order of sale have been renewed, and who could have made the sale? There is no Curator, for the heirs are all of age. He is *functus officio* by the terms of the statute, yet by the reasoning of the Appellant's counsel, the County Court can renew an order of sale of real estate by a Curator for the education of minors, who are of mature age, and have families of their own about them. This is a species of legal galvanism hitherto unknown in Missouri.

*S. Reber*, for Respondent.

The practice of bringing up cases from the County to the Circuit Courts, by appeal, seems to have sprung up under the code of 1825—whether it existed prior to that period I have not inquired—and has been either expressly decided, or tacitly assumed, to be a correct practice by the Supreme Court in the following cases:

County of Boone vs. Corlew, 3 Mo., 12; County of St. Louis vs. Sparks, 11 Mo., 201; County of Cooper vs. Geyer, 19 Mo., 257; Wilson vs. Brown's Administrator, 21 Mo., 410; Skinner vs. Platte county, 22 Mo., 437; Walker vs. Likens, 24 Mo., 298; Lewis vs. Nuckolls, 26 Mo., 278; Lacy vs. Williams, 27 Mo., 280; Hall vs. County of Audrain, 27 Mo., 329; Boggs vs. Caldwell county, 28 Mo., 586; Whitehead vs. Stoddard county, 29 Mo., 138; County of St. Louis vs. Lind, 42 Mo., 348; Lind vs. Clemens, 44 Mo., 540; Foster vs. Dunklin, 44 Mo., 216.

In Snoddy vs. Pettis county, 45 Mo., 361, the learned Judge who gave the opinion of the court, makes a *dictum* that a case cannot properly be removed from the County to the Circuit Court by an ordinary appeal, but that it ought to be done by *certiorari*; but he says in deference to the action of the court in Cooper county vs. Geyer, he will treat the record as though regularly brought up, inasmuch as the question was not raised below, and then proceeds to decide the case on its merits.— This case then is not against the former established practice, (though the *dictum* is,) but consistent with it.

In Kenrick vs. Cole, 46 Mo., 85, the same learned Judge says, that an appeal from the County Court in the matter of the probate of a will, cannot be taken either under the statutes relating to wills and administrations or under the statute touching the appellate jurisdiction of the Circuit Court, and in support of the latter proposition he cites Snoddy vs. The County of Pettis, before referred to, and Wilson vs. Brown's Administrator, 21 Mo., 410, and in reference to the last case remarks that Judge Ryland quotes the law relating to the appellate jurisdiction of the Circuit Court but seems not to rely on it. In this, with submission, he misunderstands Judge Ryland, for he held that the appeal in that case was well taken, both under the administration and the general law.

WAGNER, Judge, delivered the opinion of the court.

Absolem McVey being the father, and as such the natural guardian of several infant children under the age of fourteen years, whose mother had died, leaving these infants as her only heirs at law entitled to certain real estate, was by the County Court of Pettis County, in March, 1856, duly appointed curator of the said minors to the end that their real estate might be sold and appropriated to their education. After he was so appointed, he entered into bond as curator with security, and being duly qualified as such, he made application to the court at the same term for the sale of the real estate of the infants for their education. And in pursuance of this application, the County Court made an order to sell the land in his petition mentioned either publicly or privately, first having the land duly appraised by three disinterested householders of the county, and not to sell privately at less than the appraised value. The curator thereupon caused the land to be appraised by three disinterested householders of Pettis County, who delivered to him their certificate of appraisement written out under their affidavit, and referring to their signatures to the affidavit, as the parties making the appraisement.

This certificate is as follows:—

" We, the undersigned, being Householders of Pettis Coun-

ty, and being called upon by Absolem McVey, guardian and curator of the minor heirs of Hannah C. McVey, deceased, to-wit: William H. H. H., Reuben J., Samuel T., Joseph C. C. T. and Susannah Lucinda McVey, to appraise the real estate the minors inherit from their said mother, Hannah C. McVey deceased, upon our oaths 'state that we are not of kin to any of said parties, nor interested in this matter in any way, and that we will appraise the said land to the best of our ability,

JESSE T. HEARD,
JOHN R. BROWN,
H. WARREN.

Subscribed and sworn to before me this 4th day of March, 1856.

R. R. SPEDDIN, Clerk of County Court.

We appraise as follows to-wit: The East half of the South-east quarter and the North-east quarter of the South-east quar-te of section 33, township 46, range 21; and the East half of lot No. 2 of the North-east quarter of section 4, township 45 and range 21, containing 166 acres and 45-100 acres lying in Pettis County and State of Missouri at the sum of $1.248.75.

Filed, April 8th, 1856.

R. R. SPEDDIN, Clerk."

After thus having the lands appraised, the curator sold the same to George R. Smith for twenty-one hundred and forty-six one hundredths dollars, at private sale, and made report thereof with the certificate of appraisement attached, to the April term 1856, of the County Court, which report of sale was approved, and the curator ordered to make a deed to a pur-chaser on the payment of the purchase money. This deed was made in March 1859, and duly presented to the court, and ac-knowledged. Afterwards, in the Spring of 1869, whilst the curatorship was still pending and undetermined in the Coun-ty Court, it was suggested that the report of sale of the said land had not been made to the proper term of the court; that the April term 1856 was only an adjourned term of the Feb-ruary and March term, and that the action of the *court*

approving the sale of that time might be considered nugatory; and so the curator, at the instance of Smith, the purchaser, again reported said sale referring to the original report and appraisement, and making them a part of his report, and made affidavit to this report as the law requires, and after serving all parties interested with notice, he presented this report to the court at the regular May term 1869, for approval. The court after considering the matter, made a final order and judgment approving the sale and the report. The defendants then asked for an appeal to the Circuit Court, and the County Court made an order granting the appeal and after the cause was docketed in the Circuit Court on motion of the defendants, the cause was taken to Moniteau County on change of venue.

In the Moniteau Circuit Court, the plaintiff filed a motion to dismiss the appeal from the County Court, alleging in substance as grounds of his motion, that the County Court had no jurisdiction to grant an appeal in this kind of a case; that there was no law authorizing appeals from the judgment of the County Court approving a sale by a curator of his ward's real estate. This motion after being heard, was by the court overruled, and to this opinion of the court, the curator (plaintiff) excepted. The court then, decided that there could be no trial *de novo*, but the case could only be tried upon the record of the County Court, and then proceeding as a court of errors to hear the case alone on the County Court record, reversed the judgment of the County Court, and the plaintiffs excepted and now bring the case here by appeal.

Several propositions have been argued in this court. For the respondents it is contended that there was no valid appraisement because the appraisers names were not appended beneath the certificate; that the County Court had no authority to order the curator to sell the property at private sale; that no appeal lies in this case from the Circuit Court to this court, and that the court had no power or jurisdiction to approve the report of the sale last made by the curator. The appellants maintain the converse of these propositions and in addition

thereto, insist that no appeal was allowable from the County Court to the Circuit Court.

The law in reference to the appraisement of a minor's land sold by order of the County Court is governed by the provisions of the statute relating to administrator's sales.

The 28th section provides that before any executor or administrator shall sell any real estate he shall have it appraised by three disinterested householders of the county in which the land lies.

Section 29 declares that such appraisers shall make an affidavit that they will, according to the best of their abilities, view and appraise the estate to them shown, and that they shall view and appraise the same and deliver to the executor or administrator a certificate thereof under their hands. (R. C., 1855, p. 146, §§ 28, 29.)

I do not think that the failure of the appraisers to sign their names underneath the certificate was such a substantial omission as would destroy the validity of the appraisement; for the signing does not constitute the gist or substance of the act. The material point is: Did the appraisers in fact appraise the property, and was this appraisement delivered to the curator? About this there is no controversy. The certificate consists of the affidavit of the appraisers duly signed and sworn to by them, and then the appraisement immediately follows. "We appraise as follows," &c., this refers to the signatures of the affidavit and shows that in making the appraisement they acted under it. The certificate and appraisement so made out were by the curator attached to his report and sworn to by him and were taken and considered as the true appraisement. In letter the statute was not complied with, but in spirit and substance it was, and that is sufficient.

The power of the court to order the Guardian or curator to sell a minor's lands at private sale has always been conceded and acted upon.

In Robert vs. Casey (25 Mo., 584), the court expressly decided that the seventh section of the act concerning minors, orphans and guardians, approved February 8th, 1825, conferred

on Probate courts power to authorize Guardians of minors to sell real estate of such minors at private sale to complete their education. In their opinion the court say : " There is in the act no restriction upon the kind of sale which the court may order, whether it shall be public or private." The law as it existed in 1825 has been substantially continued down to the present time. (R. C., 1825, p. 417, § 7; *Id.*, 1835, p. 295, § 8; *Id.*, 1845, p. 551, § 22 ; *Id.*, 1855, p. 826, § 24.)

But the ground is now taken that if authority was given to sell at private sale, it was repealed by the act of 1851, and that that act required that all guardian's and curator's sales should be made publicly and not privately. The act referred to was imported into the revision of 1855 (R. C., 1855, pp. 826–7, §§ 25, 26, 27). The 25th section of the act provides, that where real estate of minors is ordered to be sold under the provisions of the preceeding section, such sale shall be advertised and conducted in the same manner as now provided by law for advertising and conducting sales of real estate of deceased persons made by executors and administrators for the payment of debts.

The 26th section enacts that no real estate of any minor sold under the provisions of the act shall be sold for less than three fourths of its appraised value, nor shall the Guardian or Curator of any minors directly or indirectly become the purchaser of such real estate. And by the 27th section it is declared that whenever any Guardian or Curator shall sell any real estate belonging to his ward under an order of court, he shall report such sale to the court ordering the sale, in the same manner as executors and administrators are now required by law to report sales of real estate made by them for the payment of debts, and such sale, if approved by said court, shall be valid to all intents and purposes. If the court refuse to approve the report, the order of sale shall thereupon be renewed and the same proceeding shall be had as upon the original order. In the enactment of the above law the intention of the Legislature was to assimilate as near as might be, the sales of curators to those of administrators and executors.

The object was not to take away any existing powers of the County Court in ordering the sale, but merely to regulate the proceedings of the Curator in conducting the sale. As in the Administration law, so in this law if there be a public sale, then it must be advertised, and if a private sale, no advertisement is required or necessary; but the sale, whether private or public, must be conducted as like sales by executors or administrators. There is no express repeal of the prior existing law, and I do not think the language used is sufficient to produce that result by implication. The section conferring the power to order private sales stands in the law precisely and identically as it did before, and the additional sections may be well construed as consistent and in harmony with the original act. The settled rule of construction is that if by any fair interpretation all the sections can stand together, then there is no repeal by implication. A later statute which is general and affirmative, does not abrogate a former one which is particular unless negative words are used, or unless the two acts are irreconcilably inconsistent or repugnant.

The law does not favor repeals by implication. (St. Louis vs. The Independent Ins. Co. of Mass., 47 Mo., 146, and cases cited.)

There is nothing irreconcilable between the general affirmative requirements for advertising and selling publicly, contained in the Act of 1851, and the particular power embodied in the prior statute, authorizing a private sale. The law providing for a private sale may be enforced and carried out, and at the same time be made to harmonize with the subsequent law. Nothing is more common in legislation than to use general language in the enactment of a law, without any intention of impairing or abrogating special or particular laws on the same subject. Hence the natural conclusion is that the right to sell at private sale was not repealed.

Passing to the next question; had the respondents the right to appeal from the judgment of the County Court to the Circuit Court? This depends upon the construction which is to be given to our statute in reference to appeals. It is ad-

mitted that no direct provision is made regulating the subject, but the authority, if sustainable, is deduced from a general power   The statute defining the powers and jurisdiction of the County Court enumerates specifically the same, and concludes with this sweeping clause, " Subject to appeal in all cases, to the Circuit Court, in such manner as may be provided by law." (1 W. S., p. 440, § 7.)

In the chapter on Circuit Courts, it provides that said courts shall have appellate jurisdiction from the judgments and orders of County Courts and Justices of the Peace in all cases not expressly prohibited by law, and shall possess a superintending control over them. (*Id.*, p. 431, § 2.)

In the case now under consideration there is no prohibition of the right of appeal, nor is there any mode pointed out, or provision made regulating the appeal.   Such being the case it is denied that an appeal will lie at all.   The case of Kenrick vs. Cole, (46 Mo., 85,) is mainly relied on to support this position.   That was a case touching the probate of a will, and it was held that the provisions of the statute in regard to appeals above referred to would not sanction or authorize an appeal.

The case was no doubt rightly decided upon  the question before the court, for there was another express provision contained in the statute, by which the matter could be determined. (Duty's Estate, 27 Mo., 43.)

But the Judge delivering the opinion went further, and said that the general language in the statute, " subject to appeal in all cases to the Circuit Court in such manner as may be provided by law " had no effect, unless the statute otherwise provided for the mode of appeal.

A similar construction was made by the same Judge, in Snoddy vs. Pettis county, (45 Mo., 361.)   It must be conceded that the language used in these cases is in conflict with the prior adjudications of this court, and that for many years the construction placed upon the statute was otherwise.   Ever since the case of Boone County vs. Corlew, (3 Mo., 11) decided in 1831 a contrary doctrine has been held.   In the county

of St. Louis vs. Sparks, (11 Mo., 201,) where it was contended that an appeal taken under the provision quoted brought up the whole case and entitled the party to a trial *de novo* in the Circuit Court, Judge Scott writing the opinion of the court said, " such jurisdiction does not impart a right to try the cause anew, or on any other evidence than that which was before the court below. Otherwise the jurisdiction would not be appellate, but original.

Lewis vs. Nuckolls, (26 Mo., 278,) was a contest about a ferry license. The act gave the County Court jurisdiction over the ferry, but prescribed no mode of taking an appeal from its orders or judgments relating to the same.

From a judgment of the County Court relating to the ferry an appeal was taken to the Circuit Court, and the latter court refused to try the cause anew, but proceeded to give judgment upon the record, and this court, by Napton, Judge, conceded that the appeal would lie, and that the only effect that it had was to take the record up as a *certiorari* would. In Lacy vs. Williams, (27 Mo., 280,) the same doctrine is reiterated and enforced. So in Hall vs. County Court of Audrain county, (*Id.*, 331,) the right of the party aggrieved to an appeal, although the manner is not provided is emphatically announced.

Upon the authority of the cases, then, it would seem that an appeal lies unless prohibited, but that where no provision is made regulating its mode or manner, its only effect is to take the record of the County Court up to the Appellate Court, just as a *certiorari* would.

In the exercise of its appellate jurisdiction, the Circuit Court, without direct authority conferred by the statute, could not proceed to try the case upon the facts, but must examine it upon the record. (See County of St. Louis vs. Lind, *et al.*, 42 Mo., 348 ; Cooper county vs. Geyer, 19 Mo., 257 ; Wilson vs. Brown's Admr., 21 Mo., 410 ; Boggs vs. Caldwell county, 28 Mo., 586 ; Whitehead vs. Stoddard county, 29 Mo., 138 ; Lind vs. Clemens, 44 Mo., 540.) That it has been the prevailing opinion that an appeal from the approval of a report

would lie, is, I think, very clear, as all the cases urge as a principal reason against the approval of the report at the term that the sale is made, that the other parties are not in court at that time and cannot protect themselves by appeal.

It is denied that an appeal was allowable from the judgment of the Circuit Court disapproving the sale to this court. Wolff and Speck vs. Wohlien (32 Mo., 124,) is relied on as authority. In that case the court did decide that the judgment of disapproval was not a final judgment, and therefore no appeal could be taken. But it seems to me that when we consider that the Circuit Court in this case acted purely in an appellate capacity and ruled on nothing but errors of law that there is some difficulty in maintaining that position. Moreover the decisions of this court not brought to its attention in Wolff and Speck vs. Wohlien are opposed to it.

In the case of Rankin vs. Perry Admr., (5 Mo., 501.) Perry as administrator of Ennis presented a claim against Rankin and Honey the representatives of Honey deceased for a demand due to his intestate. On the trial of the cause the County Court gave judgment against Perry. He then took a writ of error from the Circuit Court and in that court the judgment of the County Court was reversed and the cause remanded; an appeal was then taken to this court and an objection was made that it was improperly taken because the judgment was not final, and therefore a motion was made to dismiss. But the objection was overruled, The court speaking through McGirk, Judge, said: "In this case the decision was, that the defendant's decision in the County Court be re versed. This decision destroyed the judgment which the defendants had in their favor, and if this judgment was erroneously reversed by the Circuit Court the judgment reversing it should be reversed; then the effect will be to restore the judgment of the County Court. I am, then, of opinion that the motion should be overruled."

The same point is ruled in the same way in Perry vs. Alford. (Id., 503.)

The question was presented in the case of Strouse vs

Drennan, (41 Mo., 289) in regard to the adjudications of the late District Court.

The point was, whether an appeal could be taken to this court from a judgment of that court reversing and remanding a Circuit Court judgment, and we held that it could.

Any different ruling, it seems to me, would produce the most disastrous results. Litigation would be interminable and suits protracted indefinitely. Reversals and re-trials would follow and the controversy would never be put at rest in the court of final resort.

Though the Circuit Court judgment is not a complete and final disposition of the cause, yet it is final, so far as that court is concerned, and that is sufficient.

The remaining point is, whether the County Court had any authority to approve the report of the sale, after the length of time that had elapsed. (39 Mo., 514.)

The law says that a report of the sale shall be made at the next term of the court after it takes place. But this is not an absolute and uncontrollable requirement; many circumstances might interpose to prevent a strict and literal compliance, and the sale would not thereby be annulled. The curator by his petition for a sale brings the matter before the court, and it then becomes a pending proceeding in the court, and the jurisdiction continues till there is a final determination.

Until there is a final judgment and order approving the sale, the functions of the curator are not final and the purchaser can get no deed, nor acquire any title.

A case might be supposed where time would be material, but this does not appear to be one of them. In the case of Speck vs. Wohlien, (22 Mo., 310,) where several years had passed without a good and valid approval of the sale, Justice Scott says: "We will not undertake to determine, whether the defect in the approval may not yet be remedied by the Probate Court on notice to all those interested and whether a remedy may not be had otherwise than by a proceeding in the nature of a bill in equity, which we do not think is adapted to obtain the ends sought for by Plaintiff." There was no direct decis-

ion on the subject. The case did not call for any, but the above extract shows clearly, what the opinion of that able and learned judge was. Now here all the parties were duly notified. They came in and were heard, and I cannot see how they were injured because there was not a strict compliance on account of time.

The property was regularly appraised by the curator, and it sold for largely more than the appraised value, and the purchaser has long since paid the purchase money. That money went into the hands of the curator and constituted a portion of the funds of his wards. The curatorship is still open and unsettled and the curator is competent to act. One party has got the money and the other party is entitled to the lands. The parties have not changed their condition and no other equitable rights have intervened. By carrying out the contract and approving the sale, equal justice is meted out to all. Whereupon in my opinion the judgment of the Circuit Court should be reversed and that of the County Court affirmed.

All the Judges concurring except Adams, who did not sit.