NOLAND *et al.*, *Appellants*, v. BARRETT *et al.*

|122  181|
|125  215|

Division Two, May 24, 1894.

1. **Administrator's Sale:** APPRAISEMENT: STATUTE. The sale of real estate by an executor or administrator without having it appraised as required by Revised Statutes, 1879, section 162 (*ibid.*, R. S. 1889, sec. 161) is an irregularity for which the sale may be set aside in a direct proceeding for that purpose, but it is not on that account void in a collateral proceeding after confirmation by the probate court.

2. ———: ———: ———. *A fortiori* such sale is not void because the appraisement was made before the entry of the order for the sale.

3. ———: ADJOURNMENT. Where under a proper order of sale from the probate court the administrator advertised the sale of land for February 11, on which day, on account of a snowstorm which prevented attendance at the sale, he adjourned it to February 19, when the sale was made and was afterwards confirmed by the court, such adjournment did not render the sale void.

4. **Judicial and Execution Sales.** The difference between judicial and execution sales considered and stated.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*H. C. McDougal* and *C. F. Moulton* for appellants.

(1) The court records and deeds were read in evidence without objection, and, by the declaration refused, the court below was properly asked to test and determine their legal effect. *Bartlett v. O'Donoghue*, 72 Mo. 563; *Pettis Co. v. Gibson*, 73 Mo. 502. (2) The appraisement made two days before and filed with the petition for sale of the real estate in question, was required by statute. (R. S. 1879, sec. 147—present sec. 146.) But there was no appraisement after the order and before the sale. The latter was affirmatively required by our present section 161 (R. S. 1879, sec.

162). For the want of such second appraisement, the sale was void and the trial court erred in refusing plaintiffs' declaration. *Strause v. Drennan*, 41 Mo. 289; *Bank v. Evans*, 51 Mo. 335; *Collier v. Stanbrough*, 6 How. (U. S.) 20; *Smith v. Cockrill*, 6 Wall. (U. S.) 756; *French v. Edwards*, 13 Wall. (U. S.) 506; *Grantly v. Ewing*, 3 How. (U. S.) 707; *Phillips v. Righten*, 9 Rob. (La.) 531; *Reynolds v. Wilson*, 60 Am. Dec. 753; *Spratt v. Reid*, 3 G. Greene, 497; *Barton v. Emerson*, 4 G. Greene, 393; *Tyler v. Williamson*, 27 Ind. 450. (3) The continuance of the sale by the administrator from February 14 to February 19, 1881, rendered the sale and deed absolutely void. This postponement appears upon the faces of the report of sale and of the deed under which defendants claim, and the court erred in refusing plaintiffs' declarations of law. *Valle v. Fleming*, 19 Mo. 454; *Jones v. Carter*, 56 Mo. 403; *Ladd v. Shippie*, 57 Mo. 523; *Wolf v. Ward*, 104 Mo. 127; *Thomas v. LeBaron*, 8 Met. (Mass.) 355; *Curley's Succession*, 18 La. Ann. 728; *Blodgett v. Hitt*, 29 Wis. 168; *Mountain v. Purdy*, 11 Minn. 384; *Garner v. Bostick*, 15 La. Ann. 697; *Hobart v. Upton*, 2 Sawy. C. C. 302; *In re Hartley*, 37 N. W. Rep. 506; *Wartley v. Johnson*, 52 Am. Dec. 399; *Gilstrap v. Moore*, 59 Am. Dec. 254; *Morton v. How*, 41 Am. Dec. 607; *Clements v. Henderson*, 48 Am. Dec. 216; *Reynolds v. Wilson*, 60 Am. Dec. 753; *Gibson v. Roll*, 83 Am. Dec. 181; *Townsend v. Tallant*, 91 Am. Dec. 617; *Corwin v. Merritt*, 3 Barb. 341; *Monahan v. Vandyke*, 27 Ill. 155.

*G. F. Ballingal* and *Botsford & Williams* for respondents.

(1) The confirmation and the deed executed in conformity to the confirmed sale cure all irregularities

in the proceedings subsequent to the order of sale, and such order confirming the sale is a binding judgment which can not be collaterally attacked, except for want of jurisdiction or fraud. *Anthony v. Rice,* 110 Mo. 230; *Hughes v. McDivitt,* 102 Mo. 82; *Price v. Real Estate Association,* 101 Mo. 107; *Camden v. Plain,* 91 Mo. 117; *Fenix v. Fenix,* 80 Mo. 33; 12 Am. and Eng. Encyclopedia of Law, pp. 219–221, and cases cited; 2 Woerner's Administration Law, sec. 478, and cases cited; 5 Am. and Eng. Encyclopedia of Law, p. 304, and cases cited; *Bobb v. Barnum,* 59 Mo. 398, 399; Rorer on Jud. Sales [2 Ed.], sec. 351, and cases cited. (2) The administrator was authorized by the order of the probate court to sell the real estate in controversy, either at public or private sale. The power to sell at public sale, after due notice of the time, terms and place of sale, included the power in the administrator, regularly, on due notice, to adjourn the sale to a different time, without readvertising the sale, when in his discretion, fairly exercised, it should be deemed by him necessary to do so, in order to prevent a sacrifice of, and to obtain a fair auction price for, the property to be sold. *Judge v. Booge,* 47 Mo. 551; *Davis v. Hess,* 103 Mo. 37; *Richards v. Holmes,* 18 How. (U .S.) 147; 12 Am. and Eng. Encyclopedia of Law, pp. 217–218, and cases cited; 2 Woerner's Adm. Law, secs. 477, 478, and cases cited; Rorer on Jud. Sales [2 Ed.], sec. 104, and cases cited. (3) The omission of the administrator, Moore, to readvertise the land, after his adjournment does not vitiate the title in the hands of respondents, the evidence showing a fair sale at full value, with the utmost good faith on the part of the administrator. *Draper v. Bryson,* 17 Mo. 83; *Curd v. Lackland,* 49 Mo. 453; *Norris v. Howe,* 15 Mass. 175; *Pier v. Storm,* 37 Wis. 251, 252. (4) Even if it should be held that the sale at the adjournment, on

February 19, 1881, was invalid as a public sale, still as the administrator had full power to sell at private sale, without notice, and as the property sold for three-fourths of its appraised value, the sale is unquestionably good as a private sale, after confirmation by the court, on a report showing all the facts and circumstances attending the adjournment and sale on that day. R. S. 1879, secs. 165, 166; *Hand v. Motter*, 73 Mo. 459, 460.

GANTT, P. J.—This is an action of ejectment by the widow and heirs at law of William H. Twyman, late of Jackson county, against William T. Barrett, the tenant of Mrs. Catherine E. Donnell, and Mrs. Donnell, and her husband, for two hundred and three acres of land in Jackson county, to wit: East half of the southwest quarter, and west half of southwest quarter, except fifty acres off of the north end of the last mentioned tract, all in section 7, township 49, range 32, west; and all the land east of the Big Blue river in the east half of section 12 in township number 33, containing fifty acres; and the southwest quarter of section 7, township 49, range 32, and ten acres off the north side of the southwest quarter of section 7, township 49, range 32, containing in all two hundred and three acres. The ouster was laid March 1, 1888.

The answer is a general denial, and a plea of the statute of limitations as to one hundred acres of the land, and an averment of title to all of the land in Mrs. Donnell. The verdict and judgment was for the defendants in the court below, and since this appeal the plaintiffs have abandoned in this court any claim to one hundred acres, being all the land east of the Big Blue river in section 12, township 49, range 33, and fifty acres off the north end of the west half of the southwest quarter of section 7, township 49, range 32.

Mrs. Elizabeth Heald is the widow of William H. Twyman, deceased; said Twyman died in March, 1874, seized and possessed of all the lands sued for, in fee simple; he left five children, plaintiffs in this case. The defendants admitted possession, and denied all other allegations.

The defendants, to maintain their defense, proved the following facts:

*First.* That soon after the death of William H. Twyman, deceased, and on March 25, 1874, one Jesse Noland was duly appointed as the administrator of his estate, and, as such, sold for the payment of debts, to said defendant Mack S. C. Donnell, on June 8, 1874, one hundred acres of said land, being the same one hundred acres described in the answer herein, and there claimed by defendant under the ten years' limitation.

*Second.* That upon the acceptance of the resignation of said Noland as such administrator, and on November 16, 1878, Milton Moore, then public administrator of Jackson county, was ordered to, and did, take charge of said estate, as the administrator *de bonis non* thereof.

*Third.* That on August 11, 1880, said Milton Moore, as such administrator *de bonis non*, filed in the probate court, his petition, "for the sale of the whole of the real estate and of the personal estate with its appraised value," and that an order of publication was then duly entered thereupon.

*Fourth.* That at the next term and on November 13, 1880, upon proof of publication, said probate court ordered a sale of said real estate, "at public or private sale," and if the former, then the court "further orders that said administrator give notice of the time, terms and place of sale as by law required," etc.

*Fifth.* That under the order of sale made at said

November term, 1880, the administrator, Milton Moore, advertised the one hundred and three acres of land, remaining in dispute in this case, for sale at public auction, on February 14, 1881, and on that day he appeared at the courthouse in Independence to make said sale, and offered said property for sale under the terms of said order, but, to use the language of his report of sale, "a snowstorm of unprecedented violence had been prevailing throughout the country, rendering many of the public roads almost impassable, and it was represented to him that, owing to the inclemency of the weather and the state of the roads, many persons who desired to bid for said property could not be present; among the number, *the widow of the deceased*, and deeming it for the best interest of the creditors of the estate and for the estate itself, he adjourned said sale until Saturday, the nineteenth day of February, 1881, then to be made in pursuance of said order, notice and adjournment, and then continued said sale to the nineteenth of February, 1881, and again exposed said property to the highest and best bidder, and at said sale John McMahon, Esq., was the best bidder, for $1,200, and it was sold to him for that sum." This report was duly verified and was accompanied by the appraisment made August 9, 1880, *and was duly approved by an order of record by the probate court of Jackson county.*

On May 14, 1881, said administrator made his administrator's deed to said McMahon, in which said appraisement is recited as made on August 9, 1880, and that "said sale was adjourned from February 14 to February 19, owing to the inclemency of the weather and impassable condition of the roads and want of bidders."

It was shown *aliunde* the report and deed, that, on Saturday, Mrs. Twyman, Mr. Hale, her father, and

Mr. Hale, her brother, were present, and bid, at the sale, and many other bidders, and that it sold for its fair value at that time. It was also shown that the administrator received all of the $1,200; that it was applied, in part, to the debts, and the balance of $824 was distributed by the administrator to the heirs, the plaintiffs herein; that McMahon conveyed to Mrs. Donnell in 1881, and she and her husband and their tenants have ever since been in possession thereof, and have paid all the taxes thereon.

Plaintiffs seek to recover on two grounds. They maintain the sale by the administrator, Moore, and his deed are void. *First.* Because the appraisement was made *before*, and *not after* the order of sale. *Second*. The sale was void because the administrator adjourned and continued it from February 14 to February 19, 1881.

I. The statute in force when this sale was made, was the same as our present statute, and required that "before any executor or administrator shall sell any real estate or any interest therein, by order of the court, he shall have it appraised by three disinterested householders of the county in which the land lies." R. S. 1879, sec. 162; R. S. 1889, sec. 161. The obvious purpose of this provision was to advise the probate court of the value of the estate and assist it in exercising its judicial discretion in approving or disapproving the sale, and also to furnish *prima facie* evidence of value and the good faith of the administrator, or executor, and the purchaser.

The sale of the real estate by an executor or administrator without having it appraised is an irregularity for which the sale may be set aside in a direct proceeding for that purpose, but it is not on this account absolutely void in a collateral proceeding, after confirmation by the probate court. 2 Woerner's Amer. Law of Admin-

istration, sec. 476; *Bell v. Green*, 38 Ark. 78; *Apel v. Kelsey*, 47 Ark. 413; *Neligh v. Keene*, 16 Neb. 407.

If a sale is not to be treated as wholly void in a collateral proceeding where no appraisement at all is had, *a fortiori* a sale is not to be held void when a perfectly fair appraisement, contemporaneous with the filing of the petition for sale, is made, but before the order of the sale. The statute commands an appraisement but it is silent when that appraisement shall be made. This appraisement was made two days before the petition for sale was filed. In this manner not only was the court furnished with a guide for its approval or disapproval, but it was enabled in the first instance to determine how much and what part of the estate should be sold. While it is believed the general practice in this state has been to cause an appraisement to be made after the order of sale, we are not prepared to declare that an appraisement made at the time of filing the petition would be irregular, but we have no hesitancy in saying it will not render the sale void. Clearly not, after its approval by the probate court, under whose orders and direction it was done. Irregularities in the appraisement have not heretofore been considered by this court sufficient to invalidate the sale of an administrator or curator. *Moore v. Wingate*, 53 Mo. 398; *Johnson v. Beazley*, 65 Mo. 250; *McVey v. McVey*, 51 Mo. 406; *Bobb v. Barnum*, 59 Mo. 394.

But, even if the appraisement be conceded to be irregular, the subsequent confirmation of the report, in which that appraisement was specifically called to the attention of the probate court and of all parties interested in said lands, cured the irregularity. The order of approval was a final judgment from which an appeal could have been taken and was the judgment of a court having jurisdiction of the cause and over the parties, and is entitled in this collateral proceeding to the same

favorable presumptions and intendments that are accorded to the judgments of circuit courts, and no more open to collateral attack. *McVey v. McVey*, 51 Mo. 406; *Camden v. Plain*, 91 Mo. 117; *Price v. Real Estate Ass'n*, 101 Mo. 107; *Lingo v. Burford*, 112 Mo. 149.

II.   The remaining proposition is that the adjournment of the sale from Monday, the fourteenth day of February, 1881, to Saturday, the nineteenth day of February, 1881, rendered the sale void, notwithstanding an unprecedented snowstorm had so blocked up the roads that the widow and others desiring to bid could not reach the courthouse and this was known to the administrator, and the adjournment secured their presence on Saturday and the land brought a fair price.

An administrator's sale of real estate, under the orders of a probate court, in those states which require such sales to be reported to the court for its approval or rejection *is a judicial sale. Halleck v. Guy*, 9 Cal. 181; *Mason v. Osgood*, 64 N. C. 467; *Vandever v. Baker*, 13 Pa. St. 121; *Lynch v. Baxter*, 4 Tex. 431; ·*Worthington v. McRoberts*, 9 Ala. 297; *Grignon's Lessee v. Astor*, 2 How. (U. S.) 319. The law requiring such sales to receive the approbation of the court before it shall be binding or valid to pass the title, in effect makes the sale the act of the court, hence the propriety of denominating such sales, "judicial sales."

In this state it has been common to denominate sheriff's sales, whether under execution or decrees in partition, as *judicial. Seymour v. Farrell*, 51 Mo. 95; *Hewitt v. Weatherby*, 57 Mo. 276. But in most of the courts of last resort, and by the most discriminating text writers, the distinction has been consistently maintained between *judicial* sales and *execution* sales in those states in which execution sales are not required to be reported to the courts *for approval*. The sheriff sells by the naked authority of the writ and he must.

conform to the law, else his sale will be irregular or void according to the materiality of his departure from the requirements of the statute.    If his sale is not void the title passes at once, by his deed, without the approval of the court, whereas if the sale is a technical *judicial* sale, as it is now understood, that is to say, a sale under a decree or order of the court and which must be reported to the court for its approval, no title passes until it is approved.    *State to use v. Towl*, 48 Mo. 148; *Valle's Heirs v. Fleming's Heirs*, 29 Mo. 152; *Evans v. Snyder*, 64 Mo. 516; *Snider v. Coleman*, 72 Mo. 568; *Henry v. McKerlie*, 78 Mo. 416; Rorer on Judicial Sales, sec. 43.

While execution sales have sometimes been denominated judicial sales by this court, it does not follow that the distinction drawn by other courts between administrator's and other judicial sales, and execution sales does not obtain in this court also.    By our laws and decisions an administrator's sale has no binding effect until approved by the probate court, thus bringing it strictly within the principle of those cases which hold such sales are judicial as contradistinguished from execution sales, which are ministerial.

The courts of this state have always endeavored to sustain sales made by ministerial officers under executions on judgments.    The welfare of the community demanded that they should, for in this way property brought fair prices and was not liable to sacrifice.    But such sales are the acts of a ministerial officer, whose authority is derived from and is regulated by the law itself, and he is not required to call upon the court for approval of his acts.    When the court renders judgment and awards execution, its function is ended.    It does not direct the sheriff on what property to levy, or how to make his sale.    The law in such

cases is his guide. If he is guilty of an irregularity, the court is not responsible for it.

In a judicial sale, he acts as the agent or instrument of the court to sell a particular piece of property. He is bound to report his proceedings to the court, and if the court approves his acts, it adopts them as its own, and it becomes a judicial act, and if the court has jurisdiction, its decision is not open to collateral attack.

We have been led into this discussion because the plaintiffs rely upon the case of *Ladd v. Shippe*, 57 Mo. 523, in which a sheriff postponed a sheriff's sale of real estate on the day for which it was advertised to the succeeding day and this fact appearing on the face of the deed, it was held void, because the officer had no power to adjourn the sale.

The statute of 1835 required that "all property taken in execution by any officer shall be exposed to sale on the day for which it is advertised, between the hours of 9 in the forenoon and 5 of the afternoon, publicly, by auction, for ready money, and the highest bidder shall be the purchaser." Judge VORIES says, "It does not appear at whose motion the sale was postponed by the court, or that either party was present consenting thereto; nor does it appear at what particular time the proclamation was made at the courthouse door. It seems to me that it would be a very dangerous precedent to hold that a sale might be postponed in this way; it would open the door for abuse."

So that, while it may be true that a ministerial officer, acting under the statute, may be restricted to the methods prescribed by the statute, it becomes necessary to inquire whether an adjournment of a sale made under a decree in chancery, or the order of a

probate court, will render it void, if subsequently reported to, and approved by, the court.

In *Blossom v. Railroad*, 3 Wallace, 196, under a foreclosure decree, the marshal advertised the railroad for sale on June 6, 1862, but as no bids were received that day he adjourned the sale to the nineteenth of that month.    He again offered it for sale and Blossom bid $250,000, which was the best bid at the time, but the agent of the stockholders requested the solicitors of complainant to postpone the sale to another day and they agreed and the marshal again continued the sale for two days, and announced that appellant's bid would be regarded as pending.    An arrangement was then made to prevent the sale altogether.    Blossom, having increased his bid to the full amount of the debt, then applied to the court to have the sale confirmed to him, but the court denied his prayer.    His contention in the supreme court was that, inasmuch as his bid was the highest, it was the duty of the marshal to strike it off to him and he had no right to postpone the sale.

Upon this state of facts the supreme court of the United States said, "Every such officer has a right to exercise a reasonable discretion to adjourn such a sale, and all that can be required of him is, that he should have proper qualifications, use due diligence in ascertaining the circumstances, and act in good faith, and with an honest intention to perform his duty.    The general rule is, that a sheriff is not bound to obey the directions of the attorney of the creditor to make an unreasonable sale of the property of the debtor, if he sees that the time selected, or other attending circumstances, will be likely to produce great sacrifice of the property; but he may in such a case, if he thinks proper, postpone the sale, especially if it appears that the creditor will not sustain any considerable injury by the delay; and no

reason is perceived *why the same rule may not be safely applied in judicial sales* made under the decretal order of a court of chancery. * * * The marshal or master, in carrying out a decretal order, is more than an auctioneer. They have duties to perform for all concerned, and in the performance of those duties *they may adjourn the sale for good cause shown.*"

The difference between an administrator acting under an order of court and a marshal or master in chancery under the decree of a court of equity is merely one of mode and in no wise affects the principle involved. In either case, the officer making the sale occupies a position of trust.

In *Richard v. Holmes*, 18 How. 143–147, the supreme court of the United States, discussing the duty of a trustee to postpone a sale in foreclosing under a deed of trust, said: "If he has not this power, the elements or many unexpected occurrences may prevent an attendance of bidders, and cause an inevitable sacrifice of the property. It is a power which every prudent owner would exercise in his own behalf under the circumstances supposed, and which he may well be presumed to intend to confer on another. This power of sale does not undertake to prescribe the particular manner of making the sale. It is to be at public auction, and 'after having given public notice of such sale by advertisement at least thirty days', but it assumes that the sale will be conducted as such sales are usually conducted. A sale regularly adjourned, so as to give notice to all persons present of the time and place to which it is adjourned, is, when made, in effect, the sale of which previous public notice was given."

Other courts have held that that a public officer, upon whom a power of sale is conferred by law, may adjourn an advertised public sale to a different time and

place to obtain a better price. *Tinkom v. Purdy*, 5 Johns. 345; *Russell v. Richards*, 11 Me. 371; *Lantz v. Worthington*, 4 Barr, 153; *Warren v. Leland*, 9 Mass., side p., 265; *Collier v. Whipple*, 13 Wend. 229; *Dexter v. Shepard*, 117 Mass. 485; *Allen v. Cole*, 1 Stockton's Chy. (N. J.) 286; *Coxe v. Halsted*, 1 Green's Chy. (N. J.) 311; *Miller v. Law*, 10 Rich. Eq. (S. C.) 320.

So that a master in chancery under a decree, and an administrator or executor under an order of sale, may postpone a sale when it would otherwise result in injury to the estate or creditors, nor do we perceive the great danger in permitting such a course, seeing that it must be reported for approval. Until the court approves, no title, legal or equitable, can pass and it is open to the objections of all interested parties; but when the probate court, having once acquired jurisdiction, approves the sale, all these questions are concluded by its judgment, in all collateral actions. 2 Woerner's Amer. Law of Adm., sec. 478; authorities, *supra*.

The approval of the report in this case, which stated the postponement and the exigency therefor, was a judgment by the probate court that in its opinion the administrator exercised a wise discretion in adjourning said sale, and that judgment is final and conclusive until impeached and set aside in a direct proceeding. It results that the judgment of the circuit court must be, and is, affirmed. All of this division concur.